No. 19-3618

In the

# United States Court of Appeals
for the Eighth Circuit

UNITED STATES OF AMERICA,
Appellant,

v.

DANIEL LEWIS LEE,
Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
District Court No. 4:97-CR-243 (Baker, J.)

**OPENING BRIEF FOR THE UNITED STATES**

CODY HILAND
United States Attorney
Eastern District of Arkansas

MICHAEL GORDON
Assistant United States Attorney
Eastern District of Arkansas

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW S. MINER
Deputy Assistant Attorney General

JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1258
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ................................................................................................... 1

JURISDICTIONAL STATEMENT ........................................................................ 2

STATEMENT OF THE ISSUE .............................................................................. 2

STATEMENT OF THE CASE ............................................................................... 3

    I.    Procedural Overview ................................................................... 3

    II.    Relevant Factual and Procedural Background ............................ 8

        A.    Offense Conduct ................................................................ 8

        B.    Trial and Sentencing ......................................................... 9

        C.    Post-Trial Motion for a New Sentencing Hearing ............. 14

        D.    Collateral Review Under § 2255 ....................................... 15

        E.    Rule 60(b) Motion ............................................................ 20

        F.    Habeas Petition and Stay .................................................. 21

        G.    Present Rule 60(b) Motion and Stay ................................ 23

APPLICABLE LEGAL STANDARDS ................................................................ 25

SUMMARY OF ARGUMENT ............................................................................. 27

ARGUMENT ....................................................................................................... 30

    I.    The District Court Applied an Incorrect Legal Standard ............ 30

    II.    Lee Does Not Meet the Requirements for a Stay ....................... 35

        A.    Lee's Inability to Demonstrate a Likelihood of Success on the Merits Precludes a Stay ........................................ 35

i

1. The Underlying Ineffective-Assistance Claim Is Devoid of Merit.........................................................37

2. Lee's Rule 59(e) Motion Is Improper Even if It Is Not Subject to the Statutory Restrictions on Second or Successive § 2255 Motions .....................45

3. A Change in Law in *Banister* Would Not Establish Extraordinary Circumstances Warranting Relief Under Rule 60(b)(6)...................47

B. Lee's Undue Delay Precludes a Stay...............................49

C. The Remaining Equities Further Weigh Against a Stay.................................................................................51

CONCLUSION....................................................................................53

CERTIFICATE OF COMPLIANCE .........................................................55

CERTIFICATE OF SERVICE ................................................................56

ii

# TABLE OF AUTHORITIES

## Cases

*Ackermann v. United States,*
340 U.S. 193 (1950) ...................................................................................... 47

*Agostini v. Felton,*
521 U.S. 203 (1997) ...................................................................................... 48

*Artuz v. Bennett,*
531 U.S. 4 (2000) .......................................................................................... 48

*Barefoot v. Estelle,*
463 U.S. 880 (1983) ...................................................................................42, 43

*Bucklew v. Precythe,*
139 S. Ct. 1112 (2019) .......................................................................... 50, 52, 53

*Calderon v. Thompson,*
523 U.S. 538 (1998) ...................................................................................... 52

*Chambers v. Bowersox,*
157 F.3d 560 (8th Cir. 1998) ......................................................................... 31

*Chambers v. Bowersox,*
197 F.3d 308 (8th Cir. 1999) ...............................................................25, 31, 32, 34

*Dunn v. McNabb,*
138 S. Ct. 369 (2017) ...............................................................................27, 31

*Dunn v. Price,*
139 S. Ct. 1312 (2019) ................................................................................... 27

*Gomez v. U.S. Dist. Court for N. Dist. of Cal.,*
503 U.S. 653 (1992) ...................................................................................... 50

*Gonzalez v. Crosby,*
545 U.S. 524 (2005) ...............................................................................20, 21, 47, 48

Appellate Case: 19-3618   Page: 4   Date Filed: 12/26/2019 Entry ID: 4865389

*Hill v. McDonough*,
    547 U.S. 573 (2006) ...............................................................*passim*

*In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*,
    496 F.3d 863 (8th Cir. 2007) ................................................ 47

*In re United States*,
    197 F.3d 310 (8th Cir. 1999) ................................................. 3

*Jones v. Hobbs*,
    604 F.3d 580 (8th Cir. 2010) ..........................................*passim*

*Jones v. Kelley*,
    854 F.3d 1009 (8th Cir. 2017)........................................... 3, 51

*Lambert v. Buss*,
    498 F.3d 446 (7th Cir. 2007) ...........................................27, 33

*Lee v. Hutchinson*,
    854 F.3d 978 (8th Cir.) (per curiam), *cert. denied*, 137 S. Ct. 1623
    (2017) .............................................................................26, 30

*Lee v. Kelley*,
    854 F.3d 544 (7th Cir. 2017) ...........................................25, 31

*Lee v. United States*,
    135 S. Ct. 72 (2014) ............................................................. 4

*Lee v. United States*,
    137 S. Ct. 1577 (2017)........................................................ 5

*Lee v. United States*,
    537 U.S. 1000 (2002) ........................................................... 3

*Lee v. United States*,
    545 U.S. 1141 (2005) ........................................................... 3

*Lee v. Watson*,
    No. 19-3399, 2019 WL 6718924 (7th Cir. Dec. 6, 2019) ...................... 7, 22

iv

*McGehee v. Hutchinson*,
854 F.3d 488 (8th Cir.), *cert. denied*, 137 S. Ct. 1275 (2017) .................27, 50

*Middleton v. Roper*,
759 F.3d 867 (8th Cir. 2014) ................................................. 2, 27, 31, 36

*Nelson v. Campbell*,
541 U.S. 637 (2004) ......................................................... 3, 26, 32, 33

*Nken v. Holder*,
556 U.S. 418 (2009) ...................................................................... 26

*Nooner v. Norris*,
491 F.3d 804 (8th Cir. 2007) ......................................................*passim*

*Strickland v. Washington*,
466 U.S. 668 (1984) ......................................................... 37, 38, 45

*United States v. Fields*,
483 F.3d 313 (5th Cir. 2007) ........................................................ 43

*United States v. Kehoe*,
310 F.3d 579 (8th Cir. 2002), *cert. denied*, 538 U.S. 1048 (2003).................. 9

*United States v. Lee*,
274 F.3d 485 (8th Cir. 2001) ......................................................*passim*

*United States v. Lee*,
374 F.3d 637 (8th Cir. 2004) ......................................................*passim*

*United States v. Lee*,
715 F.3d 215 (8th Cir. 2013) ............................................... 4, 19, 20, 44

*United States v. Lee*,
792 F.3d 1021 (8th Cir. 2015)............................................... 4, 20

*United States v. Lee*,
89 F. Supp. 2d 1017 (E.D. Ark. 2000)...........................................3, 14, 15

*United States v. Lee*,
No. 97-CR-243, 2008 WL 4079315 (E.D. Ark. Aug. 28, 2008) ...........*passim*

Appellate Case: 19-3618    Page: 6    Date Filed: 12/26/2019 Entry ID: 4865389

*United States v. Lee*,
   No. 97-CR-243, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010)............*passim*

*United States v. Lee*,
   No. 97-CR-243, 2014 WL 1093197 (E.D. Ark. Mar. 18, 2014) ............ 4, 20

*United States v. Metropolitan St. Louis Sewer Dist.*,
   440 F.3d 930 (8th Cir. 2006) ........................................................18, 46

*United States v. Purkey*,
   428 F.3d 738 (8th Cir. 2005) ....................................................................9

*Williams v. Chrans*,
   50 F.3d 1358 (7th Cir. 1995) .................................................................. 26

*Williams v. United States*,
   452 F.3d 1009 (8th Cir. 2006)................................................................. 45

*Winfield v. Steele*,
   755 F.3d 629 (8th Cir. 2014) (en banc)........................................ 27, 31, 36

**Statutes and Rules**

18 U.S.C. § 1959 .........................................................................................9

18 U.S.C. § 1962 .........................................................................................9

18 U.S.C. § 3593 ...................................................................................15, 43

28 U.S.C. § 1292 .........................................................................................2

28 U.S.C. § 1651 .........................................................................................2

28 U.S.C. § 2241 ............................................................................. 1, 5, 6, 21

28 U.S.C. § 2255 .................................................................................*passim*

Fed. R. App. P. 4 .........................................................................................2

Fed. R. Civ. P. 59 ................................................................................*passim*

Appellate Case: 19-3618     Page: 7     Date Filed: 12/26/2019 Entry ID: 4865389

Fed. R. Civ. P. 60 .......................................................................*passim*

Federal Death Penalty Act, 18 U.S.C. §§ 3591-3593 ........................................ 9

**Other Authorities**

11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* (2d ed. 2019) ................................................................. 46

12 James Wm. Moore *et al.*, *Moore's Federal Practice* (3d ed. 2019) ................ 48

Appellate Case: 19-3618    Page: 8    Date Filed: 12/26/2019 Entry ID: 4865389

# INTRODUCTION

This capital case has a long history. After defendant Daniel Lewis Lee committed three murders in 1996, he was convicted of three capital offenses in 1999 and sentenced to death. Lee's convictions and sentence have since received extensive review from the district court and this Court. From the beginning, the government's cross-examination of defense expert Mark Cunningham, Ph.D., on the topic of psychopathy at Lee's sentencing hearing has been extensively litigated. Lee challenged the government's cross-examination in a motion in limine at trial and in a post-trial motion for a new sentencing hearing, and he asserted an ineffective-assistance claim related to the cross-examination in a motion for collateral relief under 28 U.S.C. § 2255; in a 2008 reconsideration motion under Federal Rule of Civil Procedure 59(e); in a 2013 motion for relief from judgment under Federal Rule of Civil Procedure 60(b); in a 2019 habeas petition under 28 U.S.C. § 2241; and in the Rule 60(b) motion that he filed in the district court in the present case on December 6, 2019, three calendar days (and one business day) before the scheduled date of his execution.

Lee's most recent Rule 60(b) motion provides no basis to stay his execution, and the district court erred in concluding otherwise. The district court applied an incorrect legal standard to evaluate Lee's stay application.

1

Appellate Case: 19-3618     Page: 9     Date Filed: 12/26/2019 Entry ID: 4865389

The court granted a stay merely because it thought there was a possibility that an anticipated Supreme Court decision could create a procedural opening for more litigation in Lee's case, but the court never found that the procedural opening, even if it materialized, could lead to relief for Lee, let alone a strong possibility that Lee would obtain relief. The court also disregarded Lee's undue delay in seeking a stay. Under the correct legal standard, the court was required to deny Lee's stay application. The district court's stay order should be vacated.

## JURISDICTIONAL STATEMENT

This district court (Baker, J.) exercised jurisdiction under 28 U.S.C. § 2255 and entered the stay order on December 6, 2019. Dkt. 1356.[1] The government filed a timely notice of appeal that same day. Dkt. 1357; *see* Fed. R. App. P. 4(a)(1)(B)(i). This Court's jurisdiction rests on 28 U.S.C. § 1292(a)(1) or § 1651. *Middleton v. Roper*, 759 F.3d 867, 868 (8th Cir. 2014) (per curiam).

## STATEMENT OF THE ISSUE

Whether the district court erred in granting a stay of Lee's execution without finding a strong likelihood of success on the merits and in disregard of

---

[1] "Dkt." refers to district court docket entries. "Tr." refers to the consecutively paginated trial transcript.

2

the equitable factors that weighed against a stay, in particular Lee's undue delay in seeking a stay.

> *Hill v. McDonough*, 547 U.S. 573 (2006)
> *Nelson v. Campbell*, 541 U.S. 637 (2004)
> *Jones v. Kelley*, 854 F.3d 1009 (8th Cir. 2017) (per curiam)
> *Jones v. Hobbs*, 604 F.3d 580 (8th Cir. 2010) (per curiam)

## STATEMENT OF THE CASE

### I.      Procedural Overview

In 1999, a federal jury found Lee guilty of committing three capital murders and recommended that Lee receive the death penalty. After the district court (Hon. G. Thomas Eisele) granted Lee's post-trial motion for a new sentencing hearing, *United States v. Lee*, 89 F. Supp. 2d 1017 (E.D. Ark. 2000), the government appealed, and this Court reversed and reinstated the death sentence. *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001).[2] The Supreme Court denied certiorari, *Lee v. United States*, 537 U.S. 1000 (2002), and after this Court subsequently affirmed Lee's conviction and sentence on direct appeal, *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004), the Supreme Court denied certiorari again, *Lee v. United States*, 545 U.S. 1141 (2005).

---

[2] While the motion for a new sentencing hearing was pending, this Court granted a petition for a writ of mandamus prohibiting subpoenas to then-Attorney General Janet Reno and then-Deputy Attorney General Eric Holder. *In re United States*, 197 F.3d 310 (8th Cir. 1999).

Appellate Case: 19-3618      Page: 11      Date Filed: 12/26/2019 Entry ID: 4865389

Lee then filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Dkt. 1118. The district court denied the motion, *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315 (E.D. Ark. Aug. 28, 2008), and also denied a motion for reconsideration under Federal Rule of Civil Procedure 59(e), *United States v. Lee*, No. 97-CR-243, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010). This Court affirmed, *United States v. Lee*, 715 F.3d 215 (8th Cir. 2013), and the Supreme Court denied certiorari, *Lee v. United States*, 135 S. Ct. 72 (2014).

In September 2013, Lee filed a motion that he titled a motion for relief from judgment under Federal Rule of Civil Procedure 60. The district court (Hon. Leon Holmes, who by then had taken over the case after Judge Eisele's retirement) concluded that it lacked jurisdiction because the motion in substance amounted to a second or successive motion for relief under § 2255 and Lee failed—as required by 28 U.S.C. § 2255(h)—to seek (let alone obtain) precertification from this Court that the motion contained newly-discovered evidence providing compelling proof of his innocence or a new rule of constitutional law made retroactive by the Supreme Court on collateral review. *United States v. Lee*, No. 97-CR-243, 2014 WL 1093197 (E.D. Ark. Mar. 18, 2014). This Court affirmed. *United States v. Lee*, 792 F.3d 1021 (8th Cir. 2015).

Appellate Case: 19-3618    Page: 12    Date Filed: 12/26/2019 Entry ID: 4865389

The Supreme Court denied certiorari. *Lee v. United States*, 137 S. Ct. 1577 (2017).

In September 2018, Lee filed another motion for collateral relief under § 2255 raising new claims, and the district court again denied the motion on the ground that it lacked jurisdiction over an uncertified second or successive motion for relief under § 2255. Dkt. 1313. This Court denied Lee's application for a certificate of appealability. *Lee v. United States*, No. 19-2432 (8th Cir.) (order entered Nov. 4, 2019).

In July 2019, the United States set a date to carry out Lee's capital sentence, scheduling his execution for December 9, 2019. About two months later, Lee filed a habeas petition under 28 U.S.C. § 2241 in the Southern District of Indiana challenging his sentence. *Lee v. Warden*, No. 2:19-CV-468 (S.D. Ind.) ("Habeas Petition") (filed Sept. 26, 2019). Lee also filed a motion for a preliminary injunction barring his execution in a lawsuit in the district court for the District of Columbia challenging the government's execution protocol. *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-MC-145 (D.D.C.) (motion filed Sept. 27, 2019). The district court in the protocol litigation granted a preliminary injunction on November 20, 2019. *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-MC-145 (D.D.C.) (order filed Nov. 20, 2019). The government filed applications in the D.C. Circuit and

5

then the Supreme Court to vacate or stay that injunction. *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19A615 (Sup. Ct.) (application filed Dec. 2, 2019).

A week before the scheduled date of Lee's execution, on the same date the government filed its application in the Supreme Court in the protocol litigation, Lee filed a lawsuit in the District of Columbia challenging the adequacy of his clemency proceedings and sought an injunction in that case barring his execution. *Lee v. Barr*, No. 1:19-CV-3611 (D.D.C.) (filed Dec. 2, 2019).[3] Two days later, Lee filed an application in this Court seeking permission to file a second or successive § 2255 motion attacking his convictions on new grounds, purporting to come forward with newly discovered evidence of his innocence. *Lee v. United States*, No. 19-3576 (8th Cir.) (application filed Dec. 4. 2019).[4]

The next day, on December 5, 2019, the district court in Lee's § 2241 habeas case in the Southern District of Indiana sua sponte entered an order staying his execution. *Lee v. Warden*, No. 2:19-CV-468 (S.D. Ind.) (order entered Dec. 5, 2019) ("Habeas Stay Order"). The government appealed and

---

[3] Lee withdrew his request for an injunction on December 18, 2019.

[4] The government filed a court-ordered response on December 7, 2019, and the application remains pending.

Appellate Case: 19-3618   Page: 14   Date Filed: 12/26/2019 Entry ID: 4865389

filed an emergency motion in the Seventh Circuit to vacate the stay order. *Lee v. Watson*, No. 19-3399 (7th Cir.) (motion filed Dec. 6, 2019).

On Friday, December 6, 2019, while the Seventh Circuit appeal was pending, Lee filed a motion in the Eastern District of Arkansas for relief from judgment (on his first § 2255 motion) under Federal Rule of Civil Procedure 60(b). Dkt. 1352. He accompanied the Rule 60(b) motion with a motion to stay his execution. Dkt. 1353. The district court (Hon. Kristine G. Baker, who has taken over this case since Judge Holmes's retirement) granted the stay motion that evening. Dkt. 1356. This appeal followed.

Shortly after the district court in this case entered the stay, the Seventh Circuit vacated the stay order in the Southern District of Indiana. *Lee v. Watson*, No. 19-3399, 2019 WL 6718924 (7th Cir. Dec. 6, 2019). And shortly after that, the Supreme Court issued an order denying the government's application in the execution protocol litigation. *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19A615 (Sup. Ct.) (order entered Dec. 6, 2019). The Court left the injunction in place pending the government's appeal in the D.C. Circuit, stating that it "expect[s] that the Court of Appeals will render its decision with appropriate dispatch." *Id.*

7

Lee's execution therefore did not go forward on December 9, 2019. This Court and the D.C. Circuit issued expedited briefing schedules in this case and the execution protocol litigation.

## II. Relevant Factual and Procedural Background

### A. Offense Conduct

Lee and Chevie Kehoe were members of a white supremacist organization known as the Aryan Peoples' Republic, or the Aryan Peoples' Resistance, which Kehoe founded for the purpose of establishing an independent nation of white supremacists in the Pacific Northwest. *Lee*, 374 F.3d at 641. In January 1996, expecting to find valuable property, Kehoe and Lee traveled from Washington to the Arkansas home of William Mueller, a gun dealer who owned a large collection of weapons and ammunition. *Lee*, 374 F.3d at 641. When Mueller arrived home with his wife Nancy and their eight-year-old daughter Sarah Powell, Lee and Kehoe overpowered and incapacitated the Muellers and then questioned Sarah Powell about the location of cash, guns, and ammunition. *Id.* at 641-42. After taking weapons worth about $30,000 and $50,000 in cash and coins, Lee and Kehoe shot the three victims with a stun gun, placed plastic trash bags over their heads, and sealed the bags with duct tape to asphyxiate them. *Lee*, 2008 WL 4079315, at *4. Kehoe and Lee taped rocks to the bodies and threw them into the nearby

8

Illinois Bayou. *Lee*, 374 F.3d at 641-42; *United States v. Kehoe*, 310 F.3d 579, 590 (8th Cir. 2002), *cert. denied*, 538 U.S. 1048 (2003).

### B.      Trial and Sentencing

Lee and Kehoe were charged with violating and conspiring to violate the RICO statute, in violation of 18 U.S.C. § 1962(c) and § 1962(d), and three counts of capital murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). Lee and Kehoe were tried together before a jury and found guilty on all counts. *See Lee*, 2008 WL 4079315, at *2.

Separate hearings were then held to determine whether each defendant should receive the death penalty for the three capital murders. *See* Tr. 7169-7337 (Kehoe sentencing hearing); Tr. 7367-8022 (Lee sentencing hearing). The Federal Death Penalty Act, 18 U.S.C. §§ 3591-3593, required the jury to determine, at each hearing, whether aggravating factors proved by the government sufficiently outweighed any mitigating factors proved by the defendants to justify the death penalty. *See generally United States v. Purkey*, 428 F.3d 738, 749, 761 (8th Cir. 2005).

The emphasis of the government's case at Lee's sentencing hearing was the aggravating factor of his future dangerousness. *See* Tr. 7379-84. The government introduced evidence about Lee's involvement in a prior murder in 1990, *see* Tr. 7394-96, 7401-07, 7412-15, 7441-46, and testimony about Lee's

9

violent behavior in prison, *see* Tr. 7462-67. The government argued that this evidence, and the evidence of Lee's offense conduct introduced during the guilt phase of the trial, established that Lee would present a danger to others in the future. Tr. 7381, 7956-75.

The emphasis of the defense presentation was that Lee suffered from mental impairment due to his troubled upbringing. *See, e.g.*, Tr. 7385-88. As relevant here, Lee called an expert witness, Mark Cunningham, Ph.D., who testified that Lee "experienced many traumatic and adverse life experiences that fundamentally shaped him . . . neurologically, psychologically, socially, emotionally and ethically, and that . . . contributed to his involvement in this offense." Tr. 7742.

The topic of psychopathy came up during the government's cross-examination of Dr. Cunningham. Before trial, the government had disclosed an expert report from Thomas Ryan, Ph.D., in which Dr. Ryan assessed Lee's future dangerousness by, among other things, administering a psychological test called the Hare psychopathy checklist revised (PCL-R). *See* Tr. 7755, 7825-27. On cross-examination of Dr. Cunningham, the government elicited testimony that he had reviewed Dr. Ryan's report and that Dr. Ryan had identified Lee as falling into the psychopathy range under the Hare psychopathy checklist revised (PCL-R), a test developed by well-respected

10

psychologist Dr. Robert Hare to determine whether an individual meets the criteria to be categorized as a "psychopath." Tr. 7754, 7782-84, 7797, 7825-27.

Lee filed a motion in limine asking the district court to exclude testimony by Dr. Cunningham (during cross-examination) or Dr. Ryan (during rebuttal) about psychopathy or Lee's future dangerousness, arguing that those were improper topics for cross-examination or rebuttal because Dr. Cunningham had not performed a risk assessment or testified about Lee's future dangerousness. *See Lee*, 274 F.3d at 489-90; Tr. 7746-47; 5/13/1999 Tr. 9. The government responded that it did not intend to present evidence about Dr. Ryan's risk assessment of Lee (which included his view that Lee's diagnosis as a psychopath using the Hare PCL-R meant he would be a danger to others in prison) but that Dr. Cunningham's testimony on direct examination had opened the door to certain questions pertaining to psychopathy. 5/13/1999 Tr. 2-7. The district court permitted the government to cross-examine Dr. Cunningham about conclusions he could draw from the investigation he performed but said it would "cut off" questioning if the government went into "areas that [Dr. Cunningham] didn't do and didn't investigate." *Id.* at 27.

The government elicited testimony from Dr. Cunningham that the Hare checklist was useful to assess the risk of future violence in the community but

11

that it had "not yet been shown to be predictive of correctional institutional violence." Tr. 7812; *see* Tr. 7806-07 (testifying that "[t]here's a greater risk of violence in the community with [a] high score" on the Hare checklist, but "[i]t has not been clearly demonstrated that there is evidence that a high score is associated with violence in an institution and in fact there are some studies that don't find any association between the two"). Dr. Cunningham stated that "even though 25 percent of the guys in higher security prisons can be diagnosed as psychopaths, the base rate, the rate of serious violence that occurs in those facilities is very low and is much lower than what would be occurring, profoundly lower, than what would be occurring in this population in the community." Tr. 7819. Dr. Cunningham testified that he had used the Hare checklist to examine a defendant in a capital case in 1996 because at the time he "was not adequately familiar with how little research there was associated with the PCL-R with institutional conduct," and so he thought it "had predictive significance for institutional behavior." Tr. 7828. According to Dr. Cunningham, however, he subsequently "studied it more thoroughly and became aware of substantial weaknesses in that part of the research, and as a result [he] quit using the instrument in capital cases." *Id.* Dr. Cunningham testified that he "did not find it to be adequately research supported to tell me . . . how is this person going to act in prison, or how is he going to behave on

12

Appellate Case: 19-3618     Page: 20     Date Filed: 12/26/2019 Entry ID: 4865389

old age parole, because there's insufficient research with that group as well." Tr. 7828-29. As a result, Dr. Cunningham "discontinued using" the Hare checklist in capital cases. Tr. 7829.

After Dr. Cunningham's testimony, the district court confirmed that Lee's counsel had interposed an ongoing objection to cross-examination of Dr. Cunningham about psychopathy. Tr. 7832. The court stated that it had "probably permitted the government to go much farther on cross-examination than is proper." Tr. 7836. The court then granted Lee's "motion in limine with respect to the issue of psychopathy, the Hare psychopathy test, and any reference to the defendant being a, quote, psychopath, unquote, on the basis that such would not be proper rebuttal." Tr. 7836.

Accordingly, when the government subsequently called Dr. Ryan as a rebuttal witness, he did not testify about his diagnosis of Lee as a psychopath or offer an opinion that Lee's diagnosis as a psychopath showed that he posed a risk of future dangerousness while in prison. *See* Tr. 7906-31. The government also did not mention psychopathy during closing arguments. *See* Tr. 7956-75, 7988-92.

The jury found that Lee would present a danger to others in the future, *see* Tr. 8017, 8020, and largely rejected Lee's mitigation case, with one or more of the jurors finding the existence of only five of the 14 mitigating factors

Appellate Case: 19-3618   Page: 21   Date Filed: 12/26/2019 Entry ID: 4865389

claimed by Lee, Tr. 8017-19. After weighing the aggravating and mitigating factors, the jury unanimously decided to impose a sentence of death for each of the three murder charges. Tr. 8019-22.

### C. Post-Trial Motion for a New Sentencing Hearing

The district court granted Lee's post-trial motion for a new sentencing hearing, concluding, as relevant here, that the cross-examination of "Dr. Cunningham went well beyond the mitigation evidence raised by Dr. Cunningham on direct and ultimately became an expanded encore presentation of the Government's case for future dangerousness." *Lee*, 89 F. Supp. 2d at 1028. The court found that, "[w]hile the psychopath evidence may, to a certain extent, have been proper cross-examination as it was an alternate explanation for [Lee's] alleged violence, the presentation of the psychopath evidence turned into future dangerousness and risk assessment evidence, thus going beyond the scope of proper cross-examination." *Id.* at 1029-30. Because "Lee chose neither to perform a risk assessment analysis nor to present rebuttal evidence on the future dangerousness aggravating factor," the court concluded, he was "ill-equipped to handle the Government's discussion of psychopathy." *Id.* at 1030. The court held that, "[i]n failing to restrict the Government's statements and inquiries regarding psychopathy more than it did, the Court

14

Appellate Case: 19-3618     Page: 22     Date Filed: 12/26/2019 Entry ID: 4865389

erred, and, as a result, Defendant Lee did not receive a fair sentencing hearing." *Id.* at 1031.

This Court reversed and reinstated Lee's death sentence, concluding, as relevant here, that the district court did not err in allowing the government to elicit testimony from Dr. Cunningham "on the issue of psychopathy," even if the testimony exceeded the scope of Dr. Cunningham's direct examination. *Lee*, 274 F.3d at 495. The Court explained that the "Federal Death Penalty Act (FDPA) erects very low barriers to the admission of evidence at capital sentencing hearings" and allows a district court to "exclude evidence only 'if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.'" *Id.* at 494 (quoting 18 U.S.C. § 3593(c)) (emphasis omitted). The Court concluded that "Lee's potential psychopathy was probative of his future dangerousness." *Id.* at 495. The Court further concluded that no "threat of unfair prejudice" existed because "Lee opened the door to testimony concerning psychological diagnosis" by "introducing a mental health expert in defense." *Id.*

### D.   Collateral Review Under § 2255

1.   After the district court reinstated the death penalty on remand and this Court affirmed Lee's conviction and sentence on direct appeal, *see Lee*, 374 F.3d at 654, Lee filed a motion to set aside, reduce, or vacate his sentence

15

under 28 U.S.C. § 2255, Dkt. 1118. As relevant here, Lee claimed that he received ineffective assistance of counsel at sentencing because his lawyers "failed to fully and continuously object during the government's improper cross-examination" of Dr. Cunningham. Dkt. 1118, at 33. According to Lee, "the government exceeded the proper scope of cross examination and made Dr. Cunningham their own expert witness on the issue of [his] future dangerousness." *Id.* Lee asserted in a footnote that Dr. Ryan no longer believes that the Hare psychopathy checklist is "an appropriate instrument to be utilized in evaluating the future danger of capital defendants," but Lee did not offer any evidence in support of that assertion or otherwise explain its relevance to his ineffective-assistance claim. *Id.* at 34 n.14.

2. The district court denied Lee's § 2255 motion. *Lee*, 2008 WL 4079315, at *1. As relevant here, the court rejected Lee's claim that his counsel had been ineffective in failing to seek to limit the government's cross-examination of Dr. Cunningham. *Id.* at *46-*47. The court noted that "[t]he subject of Dr. Cunningham's testimony has received extensive scrutiny, both post-trial and on appeal." *Id.* at *46. The court explained that "[t]rial counsel performed exactly as [Lee] now argues that they should have—by interposing a continuing objection to said cross-examination of Dr. Cunningham." *Id.* The court observed that "the merits of this issue, which have been ruled on by the

Appellate Case: 19-3618    Page: 24    Date Filed: 12/26/2019 Entry ID: 4865389

Eighth Circuit, may not be revisited on collateral review." *Id.* And the court explained that "trial counsel may not be faulted because their best efforts to limit Dr. Cunningham's testimony on cross-examination"—by not having Dr. Cunningham "perform any risk assessment or offer any testimony on direct as to a formal diagnosis of future dangerousness"—"failed." *Id.* at *47.

Lee filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), asserting numerous grounds for rehearing. Dkt. 1165. As relevant here, Lee argued for the first time that he had received ineffective assistance of counsel at sentencing because his counsel did not object to the psychopathy testimony elicited during cross-examination of Dr. Cunningham as "scientifically invalid and non-probative of the issue of future dangerousness." Dkt. 1165, at 20. Petitioner attached affidavits from psychologists stating their view that the research is insufficient to conclude that the Hare psychopathy checklist accurately predicts future dangerousness in prison. *See* Dkt. 1165-7. Petitioner also attached an affidavit from Dr. Ryan stating that he no longer believed that the Hare checklist was an appropriate tool to assess an individual's future dangerousness in prison. Dkt. 1165-4.

The district court denied the reconsideration motion. *United States v. Lee*, No. 97-CR-243, 2010 WL 5347174, at *1 (E.D. Ark. Dec. 22, 2010). The court explained that Rule 59(e) motions "serve the limited function of correcting

17

manifest errors of law or fact or to present newly discovered evidence" and "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* (quoting *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006)). The court also determined that it "should examine" Lee's Rule 59(e) to determine whether it amounted to an impermissible "successive" § 2255 motion. *Id.*; *see* 28 U.S.C. § 2255(h) (restrictions on "second or successive" § 2255 motions).

The court determined that Lee's claims "related to Dr. Ryan . . . should, in the Court's view, be deemed successive." 2010 WL 5347174, at *5. The court also concluded that these claims were "lacking in merit," explaining that the affidavit described Dr. Ryan revising his views in the "Spring of 2000," but Lee was sentenced in May 1999, and Lee "ha[d] not explained" how his sentencing counsel could be deficient in failing to challenge the "scientific underpinnings" of the checklist "almost one year before Dr. Ryan himself rejected the PCL-R as an effective predictor of future conduct." *Id.* at *5-*6. The court further stated that Lee's reconsideration motion had not shown any "manifest errors of law or fact" and that many of his claims were "either reiterations of previous arguments or attempts to introduce new evidence or

18

legal theories which could have been raised prior to the entry of judgment." *Id.* at *6.

      3.    The district court and this Court granted a certificate of appealability with respect to two issues not relevant here but denied a certificate of appealabilty on all other issues. *See Lee*, 715 F.3d at 217. The Court specifically denied a certificate of appealability on whether petitioner's sentencing counsel were ineffective because they failed to seek exclusion of testimony about "psychopathy and concomitant predisposition towards violence" as "scientifically invalid." Motion to Expand Certificate of Appealability at 70-90, *United States v. Lee*, No. 11-1380 (8th Cir.) (filed June 20, 2011). The Court also denied a certificate of appealability on whether § 2255(h)'s gatekeeping provisions for "second or successive" motions apply to a motion for reconsideration under Federal Rule of Civil Procedure 59(e). *Id.* at 124-32.

      This Court then affirmed the denial of Lee's § 2255 motion. *Lee*, 715 F.3d at 217. As relevant here, although the Court had denied a certificate of appealability on the issue, Lee argued that "the government's evidence of future dangerousness was premised on junk science." *Id.* at 224. This Court determined that the issue was "beyond the scope of our certificate of appealability" but went on to state that "we have previously concluded that

19

there was no 'threat of unfair prejudice' from the elicitation in this case of psychopathy evidence by the government during sentencing." *Id.* The Court "conclude[d] that the jury properly considered the aggravating factors advanced by the government in determining that Lee should be sentenced to death." *Id.*

### E. Rule 60(b) Motion

Lee subsequently filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b), again asserting that sentencing counsel were ineffective because they failed to challenge, as "unreliable and scientifically invalid," testimony that diagnosis as a psychopath demonstrates a risk of future dangerousness in prison. Dkt. 1230, at 46; *see id.* at 29-48. The district court denied the motion for lack of jurisdiction, concluding that the motion amounted to an uncertified second or successive motion for collateral relief under 28 U.S.C. § 2255. *Lee*, 2014 WL 1093197, at *4-*5.

This Court affirmed. *Lee*, 792 F.3d at 1022. The Court noted petitioner's acknowledgement "that his counsel made the claim in his initial § 2255 petition," albeit without sufficient "evidentiary support." *Id.* at 1023. The Court then explained that, under the Supreme Court's decision in *Gonzalez v. Crosby*, 545 U.S. 524 (2005), a Rule 60(b) motion seeking to reopen a claim to

20

cure "omissions by federal habeas counsel" is a second or successive § 2255 motion. *Id.* at 1023-24.

### F.     Habeas Petition and Stay

In September 2019, Lee filed a habeas petition under 28 U.S.C. § 2241 in the Southern District of Indiana, the district of his confinement, in which he asserted the same ineffective-assistance claim that he had raised in the prior Rule 59(e) and Rule 60(b) motions in this case, and that he now, as explained below, attempts to raise in a new Rule 60(b) motion. Habeas Petition at 7-18. He also asserted *Brady* and *Napue* claims that he had raised in an unauthorized successive § 2255 motion in this case. Habeas Petition at 41-59; *see* Dkt. 1313.

On December 5, 2019, the district court in the Southern District of Indiana sua sponte granted a stay in Lee's habeas case. As relevant here, the court found that Lee had shown a "significant possibility" that with "additional discovery" and "further factual development" he would be able to demonstrate that the *Brady* and *Napue* claims in his habeas petition were cognizable and had merit. Habeas Stay Order 9-20. The court determined that the balance of equities weighed in favor a stay. *Id.* at 20-23. And although the court recognized that "it is certainly feasible that [respondent] could have raised his *Brady* and *Napue* claims earlier than he did," it took the view that

21

Appellate Case: 19-3618     Page: 29     Date Filed: 12/26/2019 Entry ID: 4865389

Lee had "not unnecessarily delayed in bringing his *Brady* and *Napue* claims such that a stay is unwarranted." *Id.* at 23-25.

The government appealed, and the next day, December 6, 2019, the Seventh Circuit granted the government's emergency motion to vacate the district court's stay order. *Lee v. Watson*, 2019 WL 6718924, at *2. The court explained that under the relevant standards, a stay of execution requires "a 'strong showing' of probable success on the merits" and "[t]he prospect of irreparable injury is not itself enough." *Id.* at *1. The court determined that the district court had failed to apply this standard correctly because, although it found that there was a "significant possibility" that Lee's *Napue* and *Brady* claims "may" be cognizable in a habeas petition, it did not conclude that there was a "strong showing" that the claims were cognizable "or that Lee would be entitled to relief" on those claims if they were litigated. *Id.*

The court also observed that Lee did not raise the *Napue* and *Brady* claims for "more than four years after, by his own account, he obtained the evidence" to support those claims. 2019 WL 6718924, at *2. The court stated that "[i]t is understandable that a district judge, entertaining a request for relief from capital punishment, would want to take a hard look at the matter," but that someone who waits to seek relief "cannot, by the very act of delay, justify postponement of the execution." *Id.*

22

### G. Present Rule 60(b) Motion and Stay

Earlier on December 6, 2019, before the Seventh Circuit had issued its decision, Lee filed a Rule 60(b) motion (Dkt. 1352) in the Eastern District of Arkansas again attempting to revive the ineffective-assistance claim that he had asserted in his Rule 59(e) motion in September 2008—and also in his 2013 Rule 60(b) motion, Dkt. 1230, at 29-48, and his 2019 habeas petition in the Southern District of Indiana, Habeas Petition at 7-18. The motion specifically sought to assert the claim that Lee's lawyers were ineffective at sentencing for failing to challenge the cross-examination of Dr. Cunningham about psychopathy on the ground that "there was no scientific basis in 1999 for claiming that the PCL-R was a valid predictor of future dangerousness in prison." Dkt. 1352, at 2.

Lee argued that when the district court ruled on his Rule 59(e) motion, it erred in assessing whether the motion amounted to a "successive" § 2255 motion for purposes of § 2255(h)'s restrictions on second or successive § 2255 motions. Dkt. 1352, at 3. According to Lee, a Rule 59(e) motion should never be subject to the statutory restrictions on second or successive § 2255 motions. *Id.* at 4. Lee asserted that the district court should reopen the judgment denying his Rule 59(e) motion so that it may be considered anew. *Id.* at 4-6.

Appellate Case: 19-3618     Page: 31     Date Filed: 12/26/2019 Entry ID: 4865389

Lee accompanied his Rule 60(b) motion with a motion to stay his execution (Dkt. 1353) pending the Supreme Court's ruling in *Banister v. Davis*, No. 18-6943 (Sup. Ct.), a case in which certiorari was granted more than five months earlier, on June 24, 2019, and in which the petitioner contends that a timely Rule 59(e) motion should not be subject to the statutory restrictions on second or successive § 2255 motions. Lee asserted that if the Supreme Court were to rule in the petitioner's favor in *Banister*, the district court would be "required to" reopen the judgment and "reconsider the previously-denied Rule 59(e) motion." Dkt. 1353, at 2. Lee argued that a stay is appropriate because there is an "appreciable chance" that he did not receive full review of his Rule 59(e) motion due to the district court's application of the statutory restrictions on second or successive § 2255 motions. *Id.* at 2-4. Lee also claimed that the balance of equities weighed in favor of a stay because he would suffer irreparable injury if he were to be executed, he had "diligently pursued relief" on the ineffective-assistance claim in his Rule 59(e) motion, and "major stakeholders are actually opposed to [his] execution[]." *Id.* at 4-9.

The district court granted a stay that evening. Dkt. 1356. The court concluded that a stay was warranted because *Banister* might support reconsideration of Lee's previously denied Rule 59(e) motion and therefore there was an "appreciable chance" that Lee would be executed without

24

receiving the full review of his Rule 59(e) motion to which he would be entitled. *Id.* at 2-3. The court relied on *Chambers v. Bowersox*, 197 F.3d 308 (8th Cir. 1999) (per curiam), which the court described as a case in which this Court had stayed a state execution "pending a decision by the Supreme Court that, if resolved favorable for the convicted inmate, would require the courts to consider additional arguments raised." *Id.* at 3. The court concluded that "those same circumstances are present here" and that "*Chambers* remains controlling law." *Id.*

The court also rejected the government's arguments that "delay or equitable considerations" weighed against a stay "for much the same reasons the District Court in Indiana rejected those arguments." Dkt. 1356, at 3. The court concluded that "a delay of five months under the circumstances does not constitute unreasonable delay, especially given the overall timeline of this case and all related cases." *Id.* The court "reject[ed] the suggestion that the equities weigh against a stay." *Id.*

## APPLICABLE LEGAL STANDARDS

"A stay of execution is an equitable remedy" and "is not available as a matter of right." *Lee v. Kelley*, 854 F.3d 544, 546 (7th Cir. 2017) (per curiam) (citations omitted). A defendant seeking a stay of execution "must satisfy all of the requirements for a stay." *Nooner v. Norris*, 491 F.3d 804, 808 (8th Cir. 2007)

25

(quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). A stay applicant must demonstrate that he has a strong likelihood of success on the merits, that he is likely to suffer irreparable harm in the absence of a stay, and that the balance of interests (harm to the applicant and the interests of the public) weigh in favor of a stay. *See Nken v. Holder*, 556 U.S. 418, 434-36 (2009). The mere possibility of relief is not enough; the applicant must show that he has a strong likelihood of succeeding on the merits. *Id.* at 434.

In the capital context, irreparable injury is taken as established. *See, e.g.*, *Jones v. Hobbs*, 604 F.3d 580, 581-82 (8th Cir. 2010) (per curiam); *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (per curiam). But the applicant must satisfy all of the other "requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S. at 584; *accord Lee v. Hutchinson*, 854 F.3d 978, 981 (8th Cir.) (per curiam), *cert. denied*, 137 S. Ct. 1623 (2017). A court "must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584 (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)); *accord Nooner*, 491 F.3d at 808.

In short, the relevant Supreme Court decisions "emphasize two critical factors in evaluating whether a stay of execution should issue: (1) whether the

26

inmate has delayed unnecessarily in bringing the claim; and (2) whether the inmate shows a significant probability of success on the merits." *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (per curiam). This Court and the Supreme Court have repeatedly and recently vacated stays entered by lower courts on both grounds. *See, e.g.*, *Dunn v. Price*, 139 S. Ct. 1312, 1312 (2019) (delay); *Dunn v. McNabb*, 138 S. Ct. 369, 369 (2017) (success on the merits); *McGehee v. Hutchinson*, 854 F.3d 488, 491-92 (8th Cir.) (per curiam) (delay), *cert. denied*, 137 S. Ct. 1275 (2017); *Winfield v. Steele*, 755 F.3d 629, 631 (8th Cir. 2014) (en banc) (per curiam) (success on the merits); *Middleton v. Roper*, 759 F.3d 867, 868 (8th Cir. 2014) (per curiam) (success on the merits).

This Court reviews a district court order to stay an execution for abuse of discretion. *Nooner*, 491 F.3d at 807. A district court abuses its discretion if it applies an incorrect legal standard or bases its decision on clearly erroneous factual findings. *Id.* Because the district did not make findings of fact in this case, however, the clear-error standard is not applicable.

## SUMMARY OF ARGUMENT

The district court erroneously entered a stay. The Supreme Court and this Court have made clear that irreparable harm is not itself enough to grant a stay of execution. A stay applicant must also demonstrate a strong likelihood of success on the merits. A stay is also not appropriate when undue delay by

Appellate Case: 19-3618    Page: 35    Date Filed: 12/26/2019 Entry ID: 4865389

the applicant prevented the consideration of his claim on the merits without need for a stay. The district court failed to apply these standards and granted a stay merely because the Supreme Court's anticipated decision in *Banister* might allow a court to give a new look to Lee's Rule 59(e) motion, which he filed in 2008, asking the district court to reconsider its denial of his § 2255 motion. The district court did not find that there was a likelihood, let alone a strong likelihood, that Lee would be entitled to relief if a court were to give the Rule 59(e) motion another look. And the court largely ignored Lee's substantial delay in seeking a stay on the basis of *Banister*. The district court's application of an erroneous legal standard requires vacatur of the stay order. Under the proper standard, Lee was not entitled to a stay.

First, Lee did not (and cannot) demonstrate a strong likelihood of success on the merits. Most fundamentally, the underlying ineffective-assistance claim—in which Lee argues that his lawyers should have challenged as "scientifically invalid" any expert testimony linking psychopathy and future dangerousness in prison—is without merit for numerous reasons, including, critically, that because of the trial strategy of Lee's defense counsel, no expert evidence stating that psychopathy is linked to future dangerousness in prison was presented to the jury. In fact, to the contrary, the jury heard testimony from Lee's own expert witness (the only expert to testify at trial about

28

psychopathy) that scientific studies did not support a link between psychopathy and future dangerousness in prison. In addition, even if the district court were free to consider Lee's Rule 59(e) again without regard to the statutory restrictions in § 2255(h), it would still have to deny the motion because Lee, by his own admission, improperly attempted to use Rule 59(e) to present evidence that he could have submitted to the district court before it entered judgment. Finally, even if the Supreme Court were to rule in favor of the petitioner in *Banister*, the resulting change in decisional law would not establish extraordinary circumstances justifying relief from judgment under Rule 60(b)(6), at least not in the circumstances of this case.

Second, Lee's unjustified delay in seeking a stay on the basis of *Banister* also precluded the court from issuing a stay. Lee sought a stay a mere three calendar days (and one business day) before the scheduled date of his execution, even though the Supreme Court had granted certiorari in *Banister* more than five months earlier and the United States had set a date for Lee's execution four months earlier. Lee provides no excuse for that delay, and the district court's conclusory determination that the five-month delay was reasonable in the circumstances of this case was a misapplication of the relevant legal standards.

29

Appellate Case: 19-3618    Page: 37    Date Filed: 12/26/2019 Entry ID: 4865389

Vacatur of the stay order is required both because the district court did not determine that Lee made a strong showing of likely success on the merits and because of Lee's undue delay. Although those two factors independently require vacatur, the remaining equitable factors further weigh against a stay. The district court's stay order should be vacated.

## ARGUMENT

### I. The District Court Applied an Incorrect Legal Standard

The district court failed to apply the correct standard for evaluating Lee's eligibility for a stay of execution. The court concluded that an "appreciable chance" exists that the Supreme Court's decision in *Banister* might provide a basis to consider anew Lee's previously denied Rule 59(e) motion to reconsider the district court's denial of his § 2255 motion. Dkt. 1356, at 2-3. But the mere possibility that Lee might obtain additional judicial review does not demonstrate a sufficient likelihood of success on the merits. It is not enough that the applicant may validly pursue additional legal proceedings; the applicant instead must "show a significant possibility of success on the merits of his claim." *Lee v. Hutchinson*, 854 F.3d 978, 981 (8th Cir.) (per curiam) (citations omitted), *cert. denied*, 137 S. Ct. 1623 (2017). Application of this standard in the context of this case meant that Lee had to show—and the district court had to find—a strong likelihood that Lee not only would be able

30

to obtain a new look at his Rule 59(e) motion but also would be able to mount a meritorious attack on his sentence on the basis of the ineffective-assistance claim contained in that motion. *See Lee v. Kelley*, 854 F.3d 544, 546 (7th Cir. 2017) (per curiam). That standard was not applied here, let alone satisfied.

The Supreme Court will vacate a stay when there has been no finding of a substantial likelihood of success on the merits. *See Dunn v. McNabb*, 138 S. Ct. 369, 369 (2017). This Court also has vacated stays on that basis. *Winfield v. Steele*, 755 F.3d 629, 631 (8th Cir. 2014) (en banc) (per curiam); *Middleton v. Roper*, 759 F.3d 867, 868 (8th Cir. 2014) (per curiam). The same result is warranted here. Lee's failure to demonstrate a strong likelihood of success on the merits, and the district court's failure to find that Lee made that showing, requires vacatur.

In applying the incorrect legal standard, the district court relied solely on *Chambers v. Bowersox*, 197 F.3d 308 (8th Cir. 1999) (per curiam). In an earlier proceeding in that case, the Court had concluded that AEDPA's certificate-of-appealability requirement applied to a petition filed before AEDPA went into effect but denied afterwards, foreclosing appellate review of claims for which petitioner had not received a certificate of appealability. *Chambers v. Bowersox*, 157 F.3d 560, 570-71 (8th Cir. 1998). On October 18, 1999, the Supreme Court announced it would decide whether AEDPA's certificate-of-appealability

31

requirement applied in those circumstances, and a little over two weeks later, petitioner filed a motion to stay his execution pending the Supreme Court's anticipated decision. *Chambers*, 197 F.3d at 309. The Court concluded that the Supreme Court's decision might entitle petitioner to plenary review of the claims for which he had not received a certificate of appealability, and that petitioner should not be executed "when there is thus an appreciable chance that he has not received the full review process to which he is entitled." *Id.*

The district court's reliance on *Chambers* was misplaced. To start, the Court's one-page decision (over a dissent) contained no discussion of the legal standard for evaluating a stay of execution, let alone an application of the pertinent standard. *See* 197 F.3d at 309. *Chambers* did not establish a generally-applicable rule for evaluating stay applications, and its holding should be limited to that case and the specific facts present there.

In any event, even if *Chambers* had broader precedential value at the time it was decided, the Supreme Court has since made clear the legal standards for evaluating stay applications in capital cases, and those standards are the rules that must govern this case. In particular, in *Nelson*, the Supreme Court held that "before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the

32

claim," and "there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." 541 U.S. at 649-50. And in *Hill*, the Court confirmed that an inmate seeking a stay of his execution "must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits," and it noted that "[a]fter *Nelson* a number of federal courts have invoked their equitable powers to dismiss suits they saw as speculative or filed too late in the day." 547 U.S. at 584. Thus, "*Hill* and *Nelson* emphasize two critical factors in evaluating whether a stay of execution should issue," *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (per curiam), and this Court has since vacated or denied stays on the basis of the standards set forth in those cases.

In *Jones v. Hobbs*, for example, this Court vacated a stay order where the district court merely found that the applicants "had raised 'serious questions' requiring 'deliberate investigation.'" 604 F.3d at 581. The Court concluded that this was not enough to justify a stay and that the district court had "applied the wrong legal standard." *Id.* at 581-82. The Court explained that "[t]he Supreme Court has made clear" that inmates seeking a stay of execution "'must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits.'" *Id.* at 581 (quoting *Hill*, 547

Appellate Case: 19-3618   Page: 41   Date Filed: 12/26/2019 Entry ID: 4865389

U.S. at 584). This Court vacated the stay because the applicants "failed to show—and the district court did not find—that they have any realistic chance of prevailing on the merits, much less that they have a significant possibility of success on the merits." *Id.* This case and others make clear that the more recent Supreme Court cases provide the standard for evaluating stay applications. *Chambers*, in contrast, has never been cited as precedent and is no longer good law to the extent it deviates from subsequent controlling Supreme Court authority.

*Chambers* is also distinguishable because the Court in that case had no occasion to evaluate whether undue delay of the type present in this case would have foreclosed a stay. The petitioner in *Chambers* sought a stay about two weeks after the Supreme Court announced it would decide the certificate-of-appealability issue; the petitioner sought a stay six days before the scheduled date of his execution; and the court did not mention delay when it issued a stay. 197 F.3d at 309. In contrast, Lee waited more than five months after the Supreme Court granted certiorari in *Banister* and three calendar days (and one business day) before the scheduled date of his execution. As discussed below, this delay alone required denial of Lee's stay application, and in concluding otherwise, the district court did not apply the "correct standard" and did not

34

"give proper consideration" to undue delay. *Nooner v. Norris*, 491 F.3d 804, 808-09 (8th Cir. 2007).

## II. Lee Does Not Meet the Requirements for a Stay

Under the correct legal standard, the district court was required to deny Lee's stay unless he made a strong showing of a substantial likelihood he could successfully attack his sentence via his Rule 60(b) motion. The court was also required to deny the stay if Lee unnecessarily failed to seek a stay at a time when the district court would have had sufficient time to evaluate the merits of his claim without the need for a stay. Both of these factors, if properly applied, should have precluded the district court from entering a stay in this case. In addition to those two factors, which should have been determinative, the remaining equities further weighed against a stay.

### A. Lee's Inability to Demonstrate a Likelihood of Success on the Merits Precludes a Stay

No matter how the Supreme Court decides *Banister*, Lee will not be entitled to relief in his Rule 60(b) motion, in which Lee seeks to reopen the judgment so that the district court can consider his earlier Rule 59(e) motion anew without applying the restrictions on second or successive § 2255 motions. The district court, however, identified three bases for denying Lee's Rule 59(e) motion, only one of which was the statutory restrictions on second or successive § 2255 motions. The court also concluded that the ineffective-

35

assistance claim asserted in Lee's Rule 59(e) motion lacked merit. *United States v. Lee*, No. 97-CR-243, 2010 WL 5347174, at \*5 (E.D. Ark. Dec. 22, 2010). The court further concluded that Lee was not entitled to relief under Rule 59(e) because Lee had reiterated "previous arguments or attempt[ed] to introduce new evidence or legal theories which could have been raised prior to the entry of judgment." *Id.* at \*6.

Both of those conclusions were correct and would require denial of Lee's Rule 59(e) motion even assuming *Banister* were to provide a basis to consider the motion anew without regard for the restrictions on second or successive § 2255 motions. Furthermore, even if the Supreme Court were to hold that Rule 59(e) motions are not subject to the statutory restrictions on successive § 2255 motions, abrogating Eighth Circuit precedent to the contrary, the Court's decision would not provide the type of intervening change in law that creates extraordinary circumstances warranting relief from judgment under Rule 60(b)(6). Lee therefore cannot show a likelihood of success on the merits, let alone a strong likelihood. This factor alone requires vacatur of the district court's stay order. *See, e.g., Winfield*, 755 F.3d at 631; *Middleton*, 759 F.3d at 868; *Hobbs*, 604 F.3d at 581-82.

Appellate Case: 19-3618     Page: 44     Date Filed: 12/26/2019 Entry ID: 4865389

### 1. The Underlying Ineffective-Assistance Claim Is Devoid of Merit

Lee contends that if the Supreme Court were to rule in the petitioner's favor in *Banister*, the district court would have to rule on the ineffective assistance claim that he raised in his Rule 59(e) motion. *See* Dkt. 1352, at 4-5 & n.15. As discussed below, Rule 59(e) is not a proper vehicle to raise Lee's ineffective-assistance claim because he improperly used Rule 59(e) to submit new evidence that was available to him and could have been presented to the court at the time of its initial judgment. But even assuming *Banister* were to require (or permit) the district court to rule on Lee's ineffective-assistance claim, that claim is without merit.

A defendant claiming that he received ineffective assistance of counsel must satisfy the two-prong standard in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must first "show that counsel's representation fell below an objective standard of reasonableness," measured according to "prevailing professional norms." 466 U.S. at 688. As a general matter, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant must then "affirmatively prove prejudice," which means he must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

37

Appellate Case: 19-3618     Page: 45     Date Filed: 12/26/2019 Entry ID: 4865389

the proceeding would have been different." *Id.* at 693-94. Lee cannot satisfy either prong of this standard.

Lee contends that his lawyers were ineffective at sentencing because they failed to challenge cross-examination of defense expert Dr. Cunningham about psychopathy on the ground that "there was no scientific basis in 1999 for claiming that the PCL-R was a valid predictor of future dangerousness in prison." Dkt. 1352, at 2. Lee raised this argument in his first § 2255 motion (albeit incompletely) and then raised it again with additional evidence and arguments in his Rule 59(e) motion, in his 2013 Rule 60(b) motion, and in his 2019 habeas petition in the Southern District of Indiana.

The fundamental flaw in Lee's ineffective-assistance claim is that there was no expert opinion evidence at his trial—by the government expert Dr. Ryan, the defense expert Dr. Cunningham, or anyone else—that his diagnosis as a psychopath showed he would be a danger to others in prison. Lee is simply wrong when he asserts that "the Government elicited expert evidence that Mr. Lee has been clinically diagnosed as a 'psychopath' using the Hare Psychopathy Checklist-Revised (PCL-R), and that this instrument reliably predicted that Mr. Lee would continue to commit violent acts in prison." Dkt. 1352, at 2. During cross-examination of Dr. Cunningham, the government elicited testimony that Dr. Ryan, in his expert report, had diagnosed Lee as a

Appellate Case: 19-3618    Page: 46    Date Filed: 12/26/2019 Entry ID: 4865389

psychopath using the Hare checklist, but no expert testified that Lee's diagnosis as a psychopath predicted that he would be a danger in prison.

To be sure, Dr. Ryan's expert report, which was turned over to the defense before trial, contained his opinion that Lee's diagnosis as a psychopath indicated he would present a higher risk of future dangerousness in prison. But Dr. Ryan's report was not presented to the jury. And after the Court granted Lee's motion in limine, Dr. Ryan was precluded from testifying during rebuttal about "the issue of psychopathy" and "the Hare psychopathy test." Tr. 7836. Dr. Ryan therefore did not offer an opinion that Lee's diagnosis as a psychopath meant he would be a danger to others in prison.

The only evidence about psychopathy came in through Lee's own expert, Dr. Cunningham, during cross-examination by the government, and Dr. Cunningham never testified that Lee's diagnosis as a psychopath predicted his future dangerousness in prison. To the contrary, Dr. Cunningham's testimony was entirely consistent with Lee's assertion that "there was no scientific basis in 1999 for claiming that the PCL-R was a valid predictor of future dangerousness in prison." Dkt. 1352, at 2.

Dr. Cunningham acknowledged that a diagnosis as a psychopath using the Hare checklist was associated with a high risk of violence in the community. *See, e.g.*, Tr. 7806, 7807, 7809, 7810, 7812; *see also* Tr. 7815 ("The

39

psychopathy check list is state-of-the-art if you are looking at likelihood of criminal activity and violent recidivism in the community among white males through midlife."). But he repeatedly emphasized that the test had "not yet been shown to be predictive of correctional institutional violence." Tr. 7812; *see* 7806-07, 7815- 16, 7818-19, 7828-29. Dr. Cunningham made clear his view that, although "[t]here's a greater risk of violence in the community with [a] high score" on the Hare checklist, "[i]t has not been clearly demonstrated that there is evidence that a high score is associated with violence in an institution and in fact there are some studies that don't find any association between the two." Tr. 7807. This is exactly what Lee contends the jury should have been told.

Lee therefore cannot demonstrate that his lawyers performed deficiently by failing to keep out evidence that psychopathy is "a valid predictor of future dangerousness in prison," Dkt. 1352, at 2, or that he was prejudiced by the admission of such evidence. Lee's lawyers strenuously sought to keep out psychopathy evidence at Lee's sentencing hearing. *See, e.g.*, 5/13/99 Tr. 9 (arguing that "psychopath" is a "very pejorative term"). To that end, Lee's lawyers did not offer evidence about Lee's future dangerousness during the defense case and instead focused on proving mitigating factors that, according to the defense, weighed against a death sentence. This strategy allowed defense

40

counsel to object to cross-examination of Dr. Cunningham about Lee's psychopathy on the grounds that it was outside the bounds of proper cross-examination. It also allowed defense counsel to contend that the government's expert witness, Dr. Ryan, should not be allowed to testify on rebuttal about Lee's diagnosis as a psychopath. Trial counsel's strategy eventually succeeded when the district court adopted the defense position and excluded evidence "of psychopathy, the Hare psychopathy test, and any reference to the defendant being a, quote, psychopath, unquote." Tr. 7836. And as a result, the jury never heard any expert testimony linking psychopathy and future dangerousness in prison.

To be sure, before the Court fully adopted the defense position, the government was permitted to ask Dr. Cunningham questions about psychopathy. But as Judge Eisele concluded, "trial counsel may not be faulted because their best efforts to limit Dr. Cunningham's testimony on cross-examination failed." *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315, at *47 (E.D. Ark. Aug. 28, 2008). More importantly for present purposes, however, as a result of the efforts of Lee's lawyers at trial, Dr. Ryan was precluded from offering the testimony that, according to Lee, would have been "categorically false" and scientifically invalid, *i.e.*, testimony that Lee's diagnosis as a psychopath meant he was more likely to be a danger to others in

41

prison. In other words, as a result of the strategy pursued by Lee's lawyers at trial, the expert opinion testimony that Lee contends would have been scientifically invalid and unreliable was never offered to the jury. Instead, what the jury did hear, through Dr. Cunningham, is testimony that Lee contends is correct. In short, Lee's trial lawyers, by pursuing the strategy that Lee now criticizes, kept out the opinion testimony that Lee now contends would have been scientifically invalid.

Another flaw in Lee's argument is that it is far from clear that the strategy he says his lawyers should have pursued at trial would have been any more successful in keeping out evidence of psychopathy than the strategy his lawyers actually implemented. The "reliability" argument that Lee claims his lawyers should have asserted at trial is inconsistent with the Federal Death Penalty Act and the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983).

In *Barefoot*, the Court rejected the argument, supported by the American Psychiatric Association, that expert opinion testimony about future dangerousness is too unreliable to be admissible at capital sentencing hearings. 463 U.S. at 896-903. The Court concluded that the "adversary process" could be "trusted to sort out the reliable from the unreliable evidence and opinion about future dangerousness." *Id.* at 901. Relevant evidence "should be

42

admitted and its weight left to the fact finder, who would have the benefit of cross examination and contrary evidence by the opposing party." *Id.* at 898. Consistent with *Barefoot*, the Federal Death Penalty Act "erects very low barriers to the admission of evidence at capital sentencing hearings." *United States v. Lee*, 274 F.3d 485, 494 (8th Cir. 2001). The Federal Death Penalty Act broadly permits the presentation of relevant information and then allows the parties an opportunity to "rebut any information received at the hearing" and "to present argument as to the adequacy of the information." 18 U.S.C. § 3593(c); *see Lee*, 274 F.3d at 496. The statute allows "more rather than less evidence during the penalty phase" and leaves it to the adversarial system to test that evidence. *United States v. Lee*, 374 F.3d 637, 648 (8th Cir. 2004). This system "increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the offense." *Id.*

Courts applying the Federal Death Penalty Act and *Barefoot* have specifically concluded that the reliability standards for expert testimony under *Daubert* and Federal Rule of Evidence 702 do not provide the standards for determining the admissibility of expert opinion testimony about future dangerousness at a capital sentencing hearing. *United States v. Fields*, 483 F.3d 313, 341-45 (5th Cir. 2007). Lee cannot show that his lawyers performed

43

deficiently by pursuing an alternative strategy to keep out the psychopathy evidence rather than a reliability argument that would have faced a steep uphill battle under *Barefoot* and the Federal Death Penalty Act.

Lee's ineffective-assistance claim is also inconsistent with this Court's express conclusions that the cross-examination of Dr. Cunningham about psychopathy was "probative" and did not present a "threat of unfair prejudice" to Lee. *Lee*, 274 F.3d at 495. The Court reaffirmed these conclusions specifically in the context of Lee's contention that the government relied on "junk science" at his sentencing. *Lee*, 715 F.3d at 224.

In short, Lee cannot show that his sentencing counsel performed deficiently or that he was prejudiced by the way his counsel performed at sentencing. The strategy his lawyers pursued at sentencing was successful in keeping out the opinion testimony that Lee claims his lawyers should have attacked on grounds of scientific unreliability. The alternative strategy he claims his lawyers should have pursued would not have changed the evidence admitted at his sentencing hearing and very well could have resulted in the admission of even more evidence about psychopathy. When evaluating attorney performance under *Strickland*, courts should not "second-guess trial strategy [or] use the benefit of hindsight to determine what a better course of action may have been." *Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir.

Appellate Case: 19-3618     Page: 52     Date Filed: 12/26/2019 Entry ID: 4865389

2006). That admonition is particularly apt here. The strategy that Lee's trial counsel pursued was sound and well within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Because the ineffective-assistance claim in Lee's Rule 59(e) motion lacks merit, even if the district court were able to consider the Rule 59(e) motion anew, Lee would not be able to obtain relief through that motion. Thus, to the extent Lee's Rule 60(b) motion seeks to reopen the Rule 59(e) motion so that the district court may re-evaluate it, Lee cannot show any likelihood of obtaining relief through that motion, let alone a strong likelihood.[5]

### 2. Lee's Rule 59(e) Motion Is Improper Even if It Is Not Subject to the Statutory Restrictions on Second or Successive § 2255 Motions

As this Court has explained, "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly

---

[5] Lee claims that "the Government has never contested that the PCL-R evidence was, in fact, unreliable," Dkt. 1352, at 3, and that the government "has abandoned" such evidence and "no longer even attempts to introduce such evidence in capital prosecutions on account of its unreliability," *id.* at 5-6. These assertions are baseless. The government evaluates each case individually and presents expert testimony that derives from testing and analysis conducted by qualified experts. The government does not instruct its experts to perform or not to perform particular tests, and the government has not adopted a policy against introducing psychopathy evidence. But more importantly for present purposes, all of the psychopathy evidence that came in at Lee's trial was introduced by Lee's own expert and was, by Lee's own account, accurate and reliable.

45

discovered evidence." *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (citations omitted). A Rule 59(e) motion "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* (citations omitted); *see* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2810.1 (2d ed. 2019) ("The Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

Thus, even if *Banister* permitted the district court to consider Lee's Rule 59(e) motion anew, the court would be required to reject it as an impermissible attempt to raise new arguments or introduce new evidence that could have been raised earlier. As Judge Eisele explained when he denied Lee's Rule 59(e) motion back in 2008, Lee's motion did "not explain why the information he" included in the motion "was not included in connection with his original" § 2255 motion. *Lee*, 2010 WL 5347174, at *6. Lee's motion was an impermissible "attempt[] to introduce new evidence or legal theories which could have been raised prior to the entry of judgment." *Id.* In fact, Lee has conceded that he could have and should have included in his initial § 2255 motion the information he provided in his Rule 59(e) motion, but he failed to

46

Appellate Case: 19-3618     Page: 54     Date Filed: 12/26/2019 Entry ID: 4865389

do so because of negligence. *See* Dkt. 1230, at 13-15, 20-22. Thus, by Lee's own admission, he was not entitled to relief under Rule 59(e).

In short, Lee is not entitled to relief regardless of how *Banister* is decided. Even if *Banister* were to establish extraordinary circumstances justifying relief from judgment and permitted consideration of Lee's Rule 59(e) motion anew—which, as discussed below, would not be the case—the motion would have to be denied for the same reasons identified by Judge Eisele: Lee improperly attempted to use the motion to introduce evidence and arguments that he could have presented in his initial § 2255 motion.

### 3. A Change in Law in *Banister* Would Not Establish Extraordinary Circumstances Warranting Relief Under Rule 60(b)(6)

Lee's Rule 60(b) motion seeks relief from judgment under subsection (6), Dkt. 1352, at 5, and a movant seeking relief under that provision must show "'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)); *accord In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 496 F.3d 863, 868 (8th Cir. 2007). Such circumstances "rarely occur in the habeas context." *Gonzalez*, 545 U.S. at 535. And as relevant here, "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v.*

47

*Felton*, 521 U.S. 203, 239 (1997); *see* 12 James Wm. Moore *et al.*, *Moore's Federal Practice* ¶ 60.48[5] (3d ed. 2019).

In *Gonzalez v. Crosby*, for example, the district court dismissed a habeas petition on statute-of-limitations grounds, and the petitioner filed a motion for relief of judgment under Rule 60(b)(6), arguing that the dismissal was incorrect in light of the Supreme Court's subsequent interpretation of the AEDPA statute of limitations in *Artuz v. Bennett*, 531 U.S. 4 (2000). The Supreme Court concluded that "*Artuz*'s change in the interpretation of the AEDPA statute of limitations" did not establish extraordinary circumstances supporting relief under Rule 60(b)(6). *Gonzalez*, 545 U.S. at 536. "The District Court's interpretation was by all appearances correct under the Eleventh Circuit's then-prevailing interpretation of" AEDPA's statute of limitations, the Court concluded, and "[i]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation." *Id.*

Just as the change in the interpretation of AEDPA's statute of limitations did not create exceptional circumstances justifying relief under Rule 60(b)(6) in *Gonzalez*, neither would a change in the procedural rules governing Rule 59(e) motions in § 2255 cases. That is particularly true when the district court provided Lee with ample opportunity to supplement his § 2255 motion before entering judgment; Lee's Rule 59(e) was properly denied even without

48

the restrictions on second or successive § 2255 motions; and the underlying ineffective-assistance claim that Lee attempted to raise in the Rule 59(e) motion is devoid of merit. Thus, even assuming the Supreme Court rules in favor of the petitioner in *Banister*, the Court's decision would not support Lee's Rule 60(b)(6) motion for relief from judgment.

## B. Lee's Undue Delay Precludes a Stay

As discussed, the sole basis for Lee's stay application is the Supreme Court's anticipated decision in *Banister*. The Supreme Court, however, granted certiorari in *Banister* on June 24, 2019, which was one month before the United States even scheduled Lee's execution. Lee, however, did not file his Rule 60(b) motion and stay application until more than five months after the grant of certiorari in *Banister* and more than four months after his execution was scheduled. When he finally filed the motion, he did so three calendar days (one business day) before the scheduled execution, at a time when the government was already litigating a stay in the Seventh Circuit; was participating in Lee's litigation in the District of Columbia injunction proceedings regarding the execution protocol; was responding to a lawsuit by Lee in the district court in the District of Columbia challenging clemency proceedings and seeking an injunction; and was responding to Lee's successive § 2255 application in the Eighth Circuit. *See supra* pp. 5-7. That type of

49

"abusive," "last-minute," and multi-pronged litigation weighs heavily against a stay. *Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992) (per curiam); *see Bucklew v. Precythe*, 139 S. Ct. 1112, 1133-34 (2019). Lee's "use of 'piecemeal litigation' and dilatory tactics is sufficient reason by itself to deny a stay." *McGehee v. Hutchinson*, 854 F.3d 488, 492 (8th Cir.) (per curiam), *cert. denied*, 137 S. Ct. 1275 (2017).

Lee has provided no reason—let alone a justifiable one—for his delay. He claims that he "has diligently pursued relief" on the underlying ineffective-assistance claim he seeks to assert via the Rule 60(b) motion. Dkt. 1353, at 5. But that does not explain why Lee delayed for months in seeking relief based on a case that has been pending in the Supreme Court since June 2019. Lee also claims "surpris[e]" at the setting of an execution date on July 25, 2019. Dkt. 1353, at 6. But his alleged surprise does not justify waiting another four months, until the last business day before his execution, to seek relief under Rule 60(b) and an accompanying stay.

The "district court did not give proper consideration" to Lee's undue delay. *Nooner*, 491 F.3d at 809. The court simply concluded "that a delay of five months under the circumstances does not constitute unreasonable delay." Dkt. 1356, at 3. The court did not provide any rationale for this conclusion and merely referred to "the overall timeline of this case and all related cases." *Id.*

50

The court should have considered, however, whether Lee could have brought his Rule 60(b) motion and stay application at such a time as to allow the court to consider them without requiring a stay. Had Lee filed his Rule 60(b) motion five months earlier, when the Supreme Court granted certiorari in *Banister*, or even four months earlier, when the United States scheduled a date for Lee's execution, the court would have had ample time to consider the filings on the merits without the need for a stay.

The delay here is even more pronounced than the delay in *Jones v. Kelley*, 854 F.3d 1009 (8th Cir. 2017) (per curiam). In that case, the defendant could have raised an as-applied challenge to the execution protocol at the time his execution was scheduled (in February 2017) or when he was evaluated by a doctor (on March 23, 2017) but waited until April 17, 2017, one week before his scheduled execution. *Id.* at 1014. If the delay in *Jones* was "sufficient reason to deny a stay," *id.* at 1013, then so was the delay of four or five months here, until one business day before Lee's scheduled execution.

## C.    The Remaining Equities Further Weigh Against a Stay

Lee's failure to make a strong showing of likely success on the merits, and the district court's failure to conclude Lee made such a showing, requires vacatur of the stay order standing alone. So too does Lee's undue delay. Although not determinative, the balance of interests further tips against a stay.

51

The district court rejected arguments that "equitable considerations" weighed against a stay "for much the same reasons the District Court in Indiana rejected those arguments." Dkt. 1356, at 3. As the Seventh Circuit correctly concluded, however, the Indiana district court's reasoning did not justify a stay order.

The Indiana district court asserted that a stay of Lee's execution "will only minimally harm the United States." Habeas Stay Order at 22. That view, however, cannot be squared with the Supreme Court's recognition that "[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Bucklew*, 139 S. Ct. at 1133 (quoting *Hill*, 547 U.S. at 584); *see Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (explaining that "finality acquires an added moral dimension" once post-conviction proceedings are complete, and that "[o]nly with an assurance of real finality can the [government] execute its moral judgment in a case . . . [and] the victims of crime move forward knowing the moral judgment will be carried out"). The Supreme Court has recognized that unduly delaying executions can frustrate the death penalty and undermine its retributive and deterrent functions. *See Bucklew*, 139 S. Ct. at 1134.

The Indiana district court also suggested that the public interest in execution of Lee's sentence is undermined because of the length of time the

52

government took to revise its protocol and litigate Lee's numerous challenges to his conviction and sentence. Habeas Stay Order at 21-22. But the government should not be faulted for undertaking its grave responsibility to select a mechanism for implementing the ultimate punishment in a conscientious manner, including by reviewing States' experiences, soliciting and considering the opinions of medical experts, and ultimately selecting the protocol most likely to result in a humane execution. *See* Stay Application at 10-13, *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19A615 (Sup. Ct.) (filed Dec. 2, 2019). Nor should the government be faulted for taking time to respond to Lee's repeated filings with care and diligence. After years spent locating a reliable drug source and developing an effective federal protocol— and long after Lee had the opportunity to raise and litigate his many challenges to his conviction and sentence on direct appeal and collateral review under § 2255—the government has a powerful and well-recognized interest in proceeding with the administration of justice as planned. *See, e.g., Bucklew*, 139 S. Ct. at 1133-34; *Hill*, 547 U.S. at 584.

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's stay order barring Lee's execution.

Appellate Case: 19-3618     Page: 61     Date Filed: 12/26/2019 Entry ID: 4865389

Respectfully submitted,

CODY HILAND
United States Attorney
Eastern District of Arkansas

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW S. MINER
Deputy Assistant Attorney General

MICHAEL GORDON
Assistant United States Attorney
Eastern District of Arkansas

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

December 20, 2019

54

**CERTIFICATE OF COMPLIANCE**
**WITH TYPEFACE AND LENGTH LIMITATIONS**

1. This brief contains 12,236 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced, 14-point serif typeface using Microsoft Office Word 2013.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766

Appellate Case: 19-3618     Page: 63     Date Filed: 12/26/2019 Entry ID: 4865389

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on December 20, 2019. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766

Appellate Case: 19-3618    Page: 64    Date Filed: 12/26/2019 Entry ID: 4865389