# No. 19-3618

## In the
## United States Court of Appeals
## for the Eighth Circuit

———————————

UNITED STATES OF AMERICA,
Appellant,

V.

DANIEL LEWIS LEE,
Appellee.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF ARKANSAS
District Court No. 4:97-CR-243 (Baker, J.)

———————————

## BRIEF FOR DANIEL LEWIS LEE

———————————

MORRIS H. MOON
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(713) 880-3556
Morris_Moon@fd.org

GEORGE G. KOUROS
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 821-0855
George_Kouros@fd.org

Counsel for Appellee Daniel Lewis Lee

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

STATEMENT OF THE CASE ................................................................................ 1

SUMMARY OF THE ARGUMENT ....................................................................... 9

ARGUMENT ........................................................................................................... 10

I.   The Issue the Government is Appealing is Moot .................................. 10

II.  The Government's Main Argument for Reversal Cannot Be
     Considered On Appeal Because It Was Never Properly Raised In
     The District Court .................................................................................. 13

III. The District Court Correctly Applied *Chambers v. Bowersox* To
     Mr. Lee's Case ....................................................................................... 15

     A.  Appellant's argument misstates the Supreme Court's stay
         jurisprudence ............................................................................... 15
     B.  The Government's proposed stay standard cannot be
         applied in the circumstances of this case .................................... 19
         1.  "Likelihood of success on the merits" ............................... 19
         2.  "Undue delay" .................................................................... 21
     C.  Should this Court adopt the Government's stay standard, it
         must remand for factual findings ................................................ 23

IV.  The Government Wrongly Seeks to Curtail Consideration of Mr.
     Lee's Claim by Asking This Court to Decide the Case in the
     First Instance in This Appeal ................................................................ 24

     A.  The Government misrepresents both the legal claim and the
         facts purportedly supporting it in its depiction of the
         underlying ineffective assistance of counsel issue ..................... 25
         1.  The Appellant's brief addresses an invented Sixth
             Amendment claim of ineffective assistance rather than
             the one Mr. Lee has sought to litigate ............................... 26
         2.  The Government presented the PCL-R evidence as part of
             its case for future dangerousness ...................................... 27

Appellate Case: 19-3618    Page: 2    Date Filed: 01/08/2020 Entry ID: 4868783

3. Had trial counsel prepared and performed effectively, Mr. Lee's jury would not have heard the expert PCL-R evidence, and he would not have been sentenced to death . 31

B. The Government misrepresents the Rule 59 litigation that is the subject of this action ................................................................. 32

C. The Government erroneously encourages this Court to decide the merits of the Rule 60(b) in the first instance ............. 36

D. The Government misrepresents the balance of the equities......... 40

CONCLUSION ........................................................................... 41

CERTIFICATE OF COMPLIANCE ............................................. 42

CERTIFICATE OF SERVICE ...................................................... 43

ii

**TABLE OF AUTHORITIES**

**Cases**

*Air Line Pilots Ass'n v. Miller*, 523 U.S. 866 (1998)……………………………..39

*Ali v. Cangemi*, 419 F.3d 722 (8th Cir. 2005)………………………………...12, 13

*Alton & S. Ry. Co. v. Int'l Ass'n of Machinists & Aerospace Workers*, 463
   F.2d 872 (D.C. Cir. 1972)…………………………………………………………13

*Banister v. Davis*, No. 18-6493, 2019 WL 2570655 (June 24, 2019)………..*passim*

*Barefoot v. Estelle*, 463 U.S. 880 (1983)……………………………………16, 21, 31

*Barr v. Roane*, No. 19A615, 2019 WL 6649067 (Dec. 6, 2019)…………………11

*Blackorby v. BNSF Ry. Co.*, 849 F.3d 716 (8th Cir. 2017)………………………18

*Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefits Fund*, 249
   F.3d 519 (6th Cir. 2001)…………………………………………………………...38

*Blystone v. Horn*, 664 F.3d 397 (3d Cir. 2011)………………………………………….4

*Buck v. Davis*, 137 S. Ct. 759 (2017)…………………………………………..37, 38, 40

*Buck v. Stevens*, 623 Fed. Appx. 668 (5th Cir. 2015)…………………………...37

*Burton v. Stewart*, 549 U.S. 147 (2007)………………………………………..34

*Calderon v. Moore*, 518 U.S. 149 (1996)…………………………………………10

*Campbell v. Davol, Inc.*, 620 F.3d 887 (8th Cir. 2010)……………………………...13

*Chambers v. Bowersox*, 197 F.3d 308 (8th Cir. 1999)……………………………*passim*

*Clarke v. Bowen*, 843 F.2d 271 (8th Cir. 1988)…………………………………...15

*Cox v. Horn*, 757 F.3d 113 (3d Cir. 2014)…………………………………………37, 38

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980)………………………...10

*Dunn v. McNabb*, 138 S.Ct. 369 (2017)………………………………………….17

*Dunn v. Price*, 138 S.Ct. 1312 (2019)…………………………………………….17

*Fauconniere Mfg. Corp. v. Sec'y of Def.*, 794 F.2d 350 (8th Cir.1986)…………..12

iii

Appellate Case: 19-3618     Page: 4     Date Filed: 01/08/2020 Entry ID: 4868783

*Flast v. Cohen*, 392 U.S. 83 (1968)……………………………………………….10

*Gomez v. United States Dist. Court for N. Dist. of Cal.*, 503 U.S. 653 (1992)…...16

*Gonzalez v. Crosby,* 545 U.S. 524 (2005)…………………………………*passim*

*Grayson v. Warden*, 869 F.3d 1204 (11th Cir. 2017)…………………………..23

*Howard v. United States*, 533 F.3d 472 (6th Cir. 2008)………………………….4

*Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709 (1986)……………………..24

*In re Federal Bureau of Prisons Execution Protocol Cases*, Case No.

  1:19-mc-00145-TSC (D. D.C.)……………………………………………….11

*In re Sealed Case*, 552 F.3d 841 (D.C. Cir. 2009)……………………………..24

*In re Treadwell*, 637 F.3d 855 (8th Cir. 2011)…………………………………24

*In re White*, 602 Fed. Appx. 954 (5th Cir. 2015)……………………………….11

*Johnson v. United States*, 774 Fed. Appx. 334 (8th Cir. 2019)…………………...39

*Jones v. Hobbs*, 604 F.3d 580 (8th Cir. 2010)………………………………….17

*Landis v. N. American Co.*, 299 U.S. 248 (1936)……………………………….39

*Leal Garcia v. Quarterman*, 573 F.3d 214 (5th Cir. 2009)……………………….34

*Lee v. Hutchinson*, 854 F.3d 978 (8th Cir. 2017)……………………………….17

*Lee v. Kelley*, 854 F.3d 544 (8th Cir. 2017)……………………………………17

*Lewis v. Cont'l Bank Corp.,* 494 U.S. 472 (1990)……………………………...12

*Lockhart v. United States*, 136 S. Ct. 958 (2016)………………………………40

*Lonchar v. Thomas*, 517 U.S. 314 (1996)………………………………...16, 17, 18

*McFarland v. Scott*, 512 U.S. 849 (1994)……………………………………...16

*McGehee v. Hutchinson*, 854 F.3d 488 (8th Cir. 2017)…………………………..17

*Middleton v. Roper*, 759 F.3d 867 (8th Cir. 2014)………………………………17

*Mills v. Green,* 159 U.S. 651 (1895)…………………………………………...10

*Missouri ex rel. Nixon v. Craig*, 163 F.3d 482 (8th Cir. 1998)…………………...12

iv

Appellate Case: 19-3618    Page: 5    Date Filed: 01/08/2020 Entry ID: 4868783

*Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713 (8th Cir. 1976)………………...13

*Nelson v. Campbell*, 541 U.S. 637 (2004)………………………………………...21

*Nelson v. United States*, 909 F.3d 964 (8th Cir. 2018)……………………………39

*Nooner v. Norris*, 491 F.3d 804 (8th Cir. 2007)………………………………..17

*Otey v. Hopkins*, 972 F.2d 210 (8th Cir. 1992)………………………………...19

*Phelps v. Alameida,* 569 F.3d 1120 (9th Cir. 2009)………………………………34

*Pierce v. Underwood*, 487 U.S. 552 (1988)………………………………………25

*Pub. Water Supply Dist. No. 3 of Laclede Cty, Mo. v. City of Lebanon*,

   605 F.3d 511 (8th Cir. 2010)………………………………………………15

*Pullman-Std. v. Swint,* 456 U.S. 273 (1982)………………………………………24

*Roth v. G.D. Searle & Co.*, 27 F.3d 1303 (8th Cir. 1994)………………………...15

*Stafford v. Ford Motor Co.*, 790 F.2d 702 (8th Cir. 1986)………………………..14

*Stitt v. United States*, 369 F. Supp. 2d 679 (E.D. Va. 2005)……………………...35

*Strickland v. Washington*, 466 U.S. 668 (1984)………………………………..32

*South Dakota v. Hazen*, 914 F.2d 147 (8th Cir. 1990)……………………………12

*United States v. Betcher,* 534 F.3d 820 (8th Cir. 2008)…………………………..18

*United States v. Davis*, 139 S. Ct. 2319 (2019)………………………………...39

*United States v. Dunkel*, 927 F.2d 955 (7th Cir.1991)……………………………14

*United States v. Harris*, 669 F. 3d 908 (8th Cir. 2012)…………………………...10

*United States v. Knowles*, 817 F.3d 1095 (2016)………………………………40

*United States v. Lee*, 274 F.3d 485 (8th Cir. 2001)………………………..27, 31-32

*United States v. Lee,* 715 F.3d 215 (8th Cir. 2013)………………………………...1

*United States v. Lee*, 792 F.3d 1021 (8th Cir. 2015)……………………………..33

*United States v. Lee*, 89 F. Supp. 2d 1017 (E.D. Ark. Mar. 21, 2000)………*passim*

*United States v. Lee*, Case 4:97-cr-00243-GTE (E.D. Ark. Oct. 20, 2008)…...32-33

Appellate Case: 19-3618   Page: 6   Date Filed: 01/08/2020 Entry ID: 4868783

*United States v. Lee*, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010)………3, 33, 35

*United States v. Llera Plaza*, 179 F. Supp. 2d 464 (E.D. Pa. 2001)…………..28-29

*United States v. O'Reilly*, 545 F. Supp. 2d. 630 (E. D. Mich. 2008)……………...28

*United States v. Peoples*, 74 F. Supp. 2d. 930 (W.D. Mo. 1999)…………………28

*United States v. Rodriguez*, No. 2:04–CR–55, 2006 WL 487117
  (D.N.D. Feb. 28, 2006)……………………………………………………….28

*United States v. Searcy*, 284 F. 3d 938 (8th Cir. 2002)……………………………...24

*Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759 (8th Cir. 2004)……………13

*Williams v. Chrans*, 50 F.3d 1356 (7th Cir. 1995)………………………………..17

*Williams v. Chrans,* 50 F.3d 1358 (7th Cir. 1995)………………………………..17

*Winfield v. Steele*, 755 F.3d 629 (8th Cir. 2014)…………………………………17

*Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411 (5th Cir. 2001)……….23

**Constitutional Provisions**

U.S. Const. Art. III, § 2……………………………………………………………...10

**Statutes**

18 U.S.C. § 1959……………………………………………………………………...1

18 U.S.C. § 1962(c)-(d)………………………………………………………………1

18 U.S.C. § 3593(c)………………………………………………………...31, 32

28 U.S.C. § 2255(h)………………………………………………………...33, 34

**Rules**

Fed. R. of Civ. P. 59(e)……………………………………………………..2

Fed. R. of Civ. P. 60(b)…………………………………………………*passim*

Appellate Case: 19-3618    Page: 7    Date Filed: 01/08/2020 Entry ID: 4868783

## STATEMENT OF THE CASE

Mr. Lee is a federal death row inmate. In a 1999 trial over which the Honorable G. Thomas Eisele presided, Mr. Lee and a co-defendant, Chevie Kehoe, were convicted of conspiring to violate and violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)-(d), and of three murders in aid of racketeering in violation of 18 U.S.C. § 1959. Despite the Government's express acknowledgment that Mr. Kehoe was the more culpable offender, the jury sentenced him to life imprisonment and then, separately, sentenced Mr. Lee to death.

A key reason for this paradoxical result was the jury's belief that Mr. Lee would continue to be a "future danger" if not executed.[1] During the penalty phase, the Government elicited expert evidence that Mr. Lee had been clinically diagnosed as a "psychopath" using the Hare Psychopathy Checklist-Revised (PCL-R), and that this instrument reliably predicted that Mr. Lee would continue to commit violent acts in prison.[2] As Judge Eisele contemporaneously noted, in the absence of this evidence "it is very questionable whether the jury would have given

---

[1] *See United States v. Lee,* 715 F.3d 215, 223 (8th Cir. 2013) (stating that the "jury sentenced the two defendants differently" because it believed Kehoe would not be a future danger, but that Lee would).

[2] No such evidence was introduced during Mr. Kehoe's penalty phase.

Appellate Case: 19-3618    Page: 8    Date Filed: 01/08/2020 Entry ID: 4868783

Defendant Lee the death penalty." *United States v. Lee*, 89 F. Supp. 2d 1017, 1031 (E.D. Ark. Mar. 21, 2000) (Memorandum Opinion and Order regarding Future Dangerousness and the Death Penalty Protocol), *rev'd on other grounds*, 274 F.3d 485, 495 (8th Cir. 2001).

The "psychopathy" evidence was not just prejudicial; it was also categorically false. As the Government's own expert belatedly affirmed in a different federal capital habeas proceeding (as well as pretrial in another capital case around the same time), there was no scientific basis in 1999 for claiming that the PCL-R was a valid predictor of future dangerousness in prison. *See* Dkt. 1165-4 (Declaration of Thomas V. Ryan, Ph.D.).[3]

In Mr. Lee's subsequent § 2255 proceeding, post-conviction counsel alleged that trial counsel were ineffective for failing to raise this readily available challenge. *See* Dkt. 1118. The district court denied relief without an evidentiary hearing because § 2255 counsel had not proffered evidentiary support for the claim. *See* Dkt. 1163. Counsel then moved for reconsideration under Fed. R. Civ. P. 59(e), and at that time attached the relevant supporting information, including the sworn declaration of the Government's expert mentioned in Mr. Lee's initial

---

[3] "Dkt." refers to district court docket entries. "Tr." refers to the consecutively paginated trial transcript. "GB" refers to the Government's Brief.

2

§2255 motion. *See* Dkt. 1165.

However, relying on *Gonzalez v. Crosby,* 545 U.S. 524 (2005), the district court conducted a "preliminary" analysis to determine a threshold issue: whether the Rule 59(e) motion was "successive." *United States v. Lee*, 2010 WL 5347174, *1-*2, *5 (E.D. Ark. Dec. 22, 2010) (Order Denying Post-judgment Relief). As urged at the time by the Government, the district court found that it was, and thus held that it was foreclosed from reconsidering the underlying Sixth Amendment claim in relation to the withdrawn opinion of the Government's expert, or from even "considering" whether the proffered affidavits merited conducting an evidentiary hearing, and accordingly denied relief. *Id*. at *5-*6.

This "preliminary analysis" closed the door on a pivotal meritorious § 2255 claim. As the district court acknowledged, had it not been barred from considering the supporting information, it "might have determined that an evidentiary hearing was required." *Id.* at *5. Indeed, given that the Government has never contested that the PCL-R evidence was, in fact, unreliable—as well as the district court's own assessment of the powerful effect this evidence had on the jury's sentencing verdict—there is a reasonable probability that the district court would have granted relief on the underlying Sixth Amendment claim after an evidentiary hearing and full merits review.

3

Appellate Case: 19-3618    Page: 10    Date Filed: 01/08/2020 Entry ID: 4868783

Although dispositive of the Rule 59(e) motion, the district court's "preliminary analysis" was incorrect. By its own terms, *Gonzalez* extends only to motions made under Fed. R. Civ. P. 60(b), which seek to reopen a final judgment. *Gonzalez*, 545 U.S. at 529 n. 3. By contrast, a Rule 59(e) motion *suspends* the finality of the judgment. This is a material difference. A court cannot

> logically subject a Rule 59(e) motion to the statutory limitations imposed upon second or successive collateral attacks on criminal judgment because, unlike a Rule 60(b) motion, it is neither a collateral attack on the initial habeas judgment, nor a new collateral attack on the underlying criminal judgment— rather it is part and parcel of the petitioner's one full opportunity to seek collateral review.

*Blystone v. Horn*, 664 F.3d 397, 414 (3d Cir. 2011) (internal quotation marks and citation omitted). Indeed, extending *Gonzalez* to Rule 59(e) motions "would attribute to Congress the unlikely intent to preclude broadly the reconsideration of just-entered judgments," and consequently it "would almost always be effectively impossible for a district court to correct flaws in its reasoning." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008). Thus, the district court's application of *Gonzalez* to construe the Rule 59(e) motion as successive was improper.

However, several Circuit Courts—including this Circuit—have extended *Gonzalez* to Rule 59(e) motions. The United States Supreme Court this term therefore granted *certiorari* to consider this precise issue. *See Banister v. Davis*, No. 18-6493, 2019 WL 2570655 (June 24, 2019) ("[T]he petition for a writ of

4

Appellate Case: 19-3618    Page: 11    Date Filed: 01/08/2020 Entry ID: 4868783

certiorari is granted limited to the following question: Whether and under what circumstances a timely Rule 59(e) motion should be recharacterized as a second or successive habeas petition under *Gonzalez v. Crosby*, 545 U. S. 524 (2005).") The case was argued on December 4, 2019, and by all accounts, it appears that the Supreme Court is prepared to rule that *Gonzalez* does not, in fact, apply to Rule 59(e) motions.[4]

On December 6, 2019, Mr. Lee filed a motion pursuant to Fed. R. Civ. P. 60(b) seeking relief from the district court's prior judgment denying the Rule 59(e) Motion. Dkt. 1352. Specifically, Mr. Lee challenged the district court's erroneous finding that the Rule 59(e) motion was "successive" under *Gonzalez*. That "preliminary analysis" was fundamentally wrong and consequently deprived the court of the jurisdiction to conduct a full merits review of his underlying ineffective-assistance-of-counsel claim. Mr. Lee requested that the prior judgment be reopened in order to correct this "nonmerits aspect of the first federal habeas corpus proceeding." *Gonzalez*, 545 U.S. at 534.[5]

---

[4] *See*, *e.g.,* Steve Vladeck, *Argument analysis: Justices seem likely to side with Texas prisoner in important habeas case*, SCOTUSblog (Dec. 6, 2019), https://www.scotusblog.com/2019/12/argument-analysis-justices-seem-likely-to-side-with-texas-prisoner-in-important-habeas-case/ (last visited Jan. 6, 2020)).

[5] This was a "true" Rule 60(b) motion because it did not raise a new claim for relief; rather, it challenged only a threshold procedural ruling of the habeas court which precluded a proper merits determination. *See Gonzalez*, 545 U.S. at

Appellate Case: 19-3618    Page: 12    Date Filed: 01/08/2020 Entry ID: 4868783

Mr. Lee argued that his motion met the required showing of extraordinary circumstances. Significantly, the claim at issue—trial counsel's ineffectiveness in failing to challenge the indisputably unreliable and highly prejudicial PCL-R evidence introduced in Mr. Lee's sentencing trial—directly implicated the reliability of Mr. Lee's sentence. Indeed, the district court itself had contemporaneously opined it was "very questionable" whether Mr. Lee would have received a death sentence in the absence of that evidence. *Lee*, 89 F. Supp. 2d at 1031.

As Mr. Lee further noted, he remains the only prisoner on federal death row whose sentence was tainted by the flawed PCL-R evidence; the Government no longer even attempts to introduce such evidence in capital prosecutions on account of its unreliability. Thus, it would be a manifest injustice to allow Mr. Lee to be executed on the basis of plainly unsound evidence that has been roundly condemned in the field of forensic psychology, *see* Dkts. 1165-5, 1165-6, & 1165-7, that the Government's own expert no longer stands by, and that the Government itself has abandoned.[6]

---

532 n.4 (Rule 60(b) motion proper if it "merely asserts that a previous ruling which precluded a merits determination was in error-for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar").

[6] The Government half-heartedly protests that this is not true. *See* GB 45 at n.5. And yet, it cannot point to a single pleading where it has defended the

6

Appellate Case: 19-3618    Page: 13    Date Filed: 01/08/2020 Entry ID: 4868783

Since the Supreme Court's decision in *Banister* would be dispositive of Mr. Lee's present 60(b) motion, he separately moved to stay his scheduled December 9, 2019 execution and hold the Rule 60 motion in abeyance pending that ruling. *See* Dkt. 1353. Citing *Chambers v. Bowersox*, 197 F.3d 308 (8th Cir. 1999) (*per curiam*), Mr. Lee argued that a stay was warranted based on a pending Supreme Court case that could entitle him to additional process if decided in his favor. Dkt. 1353 at 3-4. Mr. Lee further noted that the Government had filed an emergency appeal to vacate a preliminary injunction issued by a different court that enjoined it from carrying out his execution, and that the request for a stay was needed "in the event the current order enjoining the Government from executing him is vacated." *Id*. at 9.

The Government did not contest that Mr. Lee's motion was a "true" 60(b) motion. In fact, it did not address that motion at all. Instead, it filed an opposition to Mr. Lee's request for a stay of execution. *See* Dkt. 1355.[7] It presented two arguments to the district court for why a stay should be denied: (1) Mr. Lee

---

scientific soundness of relying on the PCL-R to predict future dangerousness in prison, nor can it identify a single federal capital case in the last 20 years where it has introduced PCL-R evidence for that purpose.

[7] For the Court's convenience, the Government's opposition has been attached in full as an Addendum to Mr. Lee's Brief.

7

engaged in "undue delay" in seeking relief; and (2) the balance of the equities weighed against a stay. *See id*. at i, 6-11.

The district court granted Mr. Lee's request to stay his December 9, 2019 execution pending the decision in *Banister*. *See* Dkt. 1356. It agreed that *Banister* was dispositive of Mr. Lee's Rule 60(b) motion and might require the district court to reconsider his Rule 59(e) motion, and that "the Government does not refute the potential impact of the *Banister* decision on Mr. Lee's case." *Id.* at 3. It further held that *Chambers* was controlling law with respect to the stay request, and that Mr. Lee had made the requisite showing under that case to warrant a stay. *Id*. As in *Chambers*, there was a "pending a decision by the Supreme Court that, if resolved favorably for the convicted inmate, would require the courts to consider additional arguments raised," and thus the Government could not be allowed to execute Mr. Lee "when there is thus an appreciable chance that he has not received the full review process to which he is entitled." *Id*. (quoting *Chambers*, 197 F.3d at 309).

On December 6, 2019, the Supreme Court denied the Government's motion to vacate (or stay the effect of) the preliminary injunction. The injunction therefore remains in place while briefing continues.

8

# SUMMARY OF ARGUMENT

There is no longer a case or controversy before this Court and thus this appeal is moot. Mr. Lee's execution date has passed, he has no scheduled execution, and another federal court has enjoined the Government from executing Mr. Lee. Under these circumstances, there is no effectual relief this Court can grant to Appellant and any decision would be advisory. This Court should find that the underlying order staying Mr. Lee's execution has been rendered moot and dismiss this appeal.

In the alternative, Appellant's arguments before this Court should be rejected because they were not raised below. Finally, the district court did not abuse its discretion when it applied the stay standard in *Chambers v. Bowersox,* 197 F.3d 308 (8th Cir. 1999) (*per curiam*). Appellant's proposed stay standard misunderstands the nature of the stay and improperly requests that this Court decide the merits of the case in the first instance—albeit based on a number of misrepresentations of the facts and the previous proceedings in this capital case.

9

## I. THE ISSUE THE GOVERNMENT IS APPEALING IS MOOT.

It is long-settled law that a federal court should not "give opinions on moot questions or abstract propositions, or [ ] declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills v. Green,* 159 U.S. 651, 653 (1895). The federal power of the judiciary only extends to "Cases" or "Controversies," U.S. Const. Art. III, § 2, a requirement that is not met if "the question sought to be adjudicated has been mooted by subsequent developments." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). If there is no remaining cause of action, the case must be dismissed for lack of jurisdiction. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 335 (1980). When an event occurs during the pendency of an appeal that renders it impossible for a court to grant effectual relief, the appeal should be dismissed. *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (*per curiam*); *United States v. Harris*, 669 F. 3d 908, 910 (8th Cir. 2012) (dismissing appeal as moot where "there is no effectual relief available") (citing *Calderon*, 518 U.S. at 150).

At this juncture, there is no "case or controversy" for this Court to decide, and it cannot grant effectual relief to Appellant. The district court's order stayed the execution of Mr. Lee scheduled for December 9, 2019. That date has come and

Appellate Case: 19-3618     Page: 17     Date Filed: 01/08/2020 Entry ID: 4868783

gone, and no new execution date has been set. Because there is no currently scheduled execution to stay, the underlying district court order staying the execution is moot. Accordingly, this appeal should be dismissed. *See In re White*, 602 Fed. Appx. 954, 958 (5th Cir. 2015) ("Because White's execution date has come and passed, and because no new execution date has been set, there is no scheduled execution to stay. Accordingly, White's motion for a stay of execution must be dismissed as moot.").

Additionally, this Court can provide no effectual relief to Appellant because the appeal has been rendered moot by another proceeding: *In re Federal Bureau of Prisons Execution Protocol Cases*, Case No. 1:19-mc-00145-TSC (D. D.C.). The Government has been enjoined in that case from carrying out Mr. Lee's execution until that matter, which challenges the legality of the BOP execution protocol, is resolved. *See id.*, 2019 WL 6691814 (D. D.C. Nov. 20, 2019).[8] Thus, there is no "effectual relief available" to the Government in this appeal; even if it were to prevail here, it could not obtain an order authorizing it to execute Mr. Lee.

---

[8] The Government's emergency motion to vacate the preliminary injunction was denied by the Court of Appeals for the District of Columbia without a dissent, as was its emergency motion to the Supreme Court. *See In re Federal Bureau of Prisons Execution Protocol Cases*, No. 19-5322 (D.C. Cir. Dec. 2, 2019); *Barr v. Roane*, No. 19A615, 2019 WL 6649067 (Dec. 6, 2019). The matter is currently pending before the Court of Appeals and will be argued on January 15, 2020.

Appellate Case: 19-3618    Page: 18    Date Filed: 01/08/2020 Entry ID: 4868783

Consequently, this appeal should be dismissed as moot.

Given these changed circumstances, there is no remedy this Court could fashion that could restore the Government to its prior position. At best, it could only provide an advisory opinion—in the event that the following three conditions arise: (1) the preliminary injunction issued by the District Court for the District of Columbia is vacated, (2) a new execution date is set for Mr. Lee, and (3) *Banister* is still not yet decided. But none of these events has transpired, and federal courts may not give "an opinion advising what the law would be upon a hypothetical state of facts." *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477 (1990) (citation and internal quotation marks omitted).[9]

Moreover, even if this appeal were not moot "in the Article III sense," it is "prudentially moot in light of the myriad of uncertainties in this case," *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005), including whether the Government

---

[9] *See also Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 484 (8th Cir.1998) ("[I]f this case is indeed moot, we must refrain from reaching the merits because any opinion issued would be merely 'advisory' and rest on hypothetical underpinnings."); *South Dakota v. Hazen*, 914 F.2d 147, 149-50 (8th Cir. 1990) ("Federal judicial power cannot be called upon to decide any issues in a moot case, even if they are collateral to the merits. … Were we now to issue an opinion deciding whether we have the authority to review the [appellants'] actions, we would be issuing an advisory opinion where nothing we might say would affect the rights of the parties *in this case*."); *Fauconniere Mfg. Corp. v. Sec'y of Def.*, 794 F.2d 350, 352 (8th Cir.1986) ("If a case is moot, federal judicial power is at an end, and we have no right to address other issues[.]").

Appellate Case: 19-3618     Page: 19     Date Filed: 01/08/2020 Entry ID: 4868783

will prevail in vacating the preliminary injunction, when *Banister* will be decided, and whether the Government will set a new execution date. *See Ali*, 419 F.3d at 724 ("Even if a court has jurisdiction under Article III to decide a case, prudential concerns may militate against the use of judicial power, *i.e.*, the court should treat the case as moot for prudential reasons.") (internal quotation marks and citation omitted); *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 765 (8th Cir. 2004) (adopting prudential mootness doctrine).[10] As a matter of prudence, this Court should treat this case as moot and dismiss it.

## II. THE GOVERNMENT'S MAIN ARGUMENT FOR REVERSAL CANNOT BE CONSIDERED ON APPEAL BECAUSE IT WAS NEVER PROPERLY RAISED IN THE DISTRICT COURT.

"It is old and well-settled law that issues not raised in the trial court cannot be considered by this court as a basis for reversal." *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir. 1976); *see also Campbell v. Davol, Inc.*, 620 F.3d 887, 891-92 (8th Cir. 2010) (refusing to consider on appeal issue that "was not fully developed in the trial court"). Contrary to this principle, the Government has

---

[10] *See also Alton & S. Ry. Co. v. Int'l Ass'n of Machinists & Aerospace Workers*, 463 F.2d 872, 877 (D.C. Cir. 1972) (recognizing "the constitutional power of a court to decide a contention presented on appeal does not define a constitutional duty. There is latitude in appellate courts to develop doctrines of judicial administration that permit a court to decline decision though not precluded by a jurisdictional bar from consideration of the matter.").

Appellate Case: 19-3618    Page: 20    Date Filed: 01/08/2020 Entry ID: 4868783

made the focus of its appeal an argument that it *never* presented to the district court: that Mr. Lee's inability to demonstrate a likelihood of success on the merits precludes a stay.

The Government made only two arguments to the district court: (1) a stay should be denied "based on the last-minute nature of Lee's request and his undue delay in seeking relief"; and (2) the balance of equities weighs against a stay. *See* Dkt. 1355 at i. Compare that pleading with its brief here: in addition to these two factors, which total about five pages, GB at 49-53, the Government now devotes nearly three times as much space to arguing that the district court's order should be reversed for failing to apply the "likelihood of success" factor. *See* GB at 35-49. Yet none of the extensive and varied arguments it raises in this proceeding—which include assessments of the likelihood of success of the Rule 60 motion, the Rule 59 motion, and the underlying IAC claim—were ever presented to the district court.[11]

---

[11] The Government asserted in passing that the underlying IAC claim lacked merit. Dkt. 1355 at 8 n.2. But it never argued that as a basis for why a stay should be denied, nor did it brief the "likelihood of success" factor. As this Court has recognized, "district courts cannot be expected to consider matters that the parties have not expressly called to their attention, even when such matters arguably are within the scope of the issues that the parties have raised." *Stafford v. Ford Motor Co.*, 790 F.2d 702, 706 (8th Cir. 1986); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

14

(In fact, the district court explicitly noted in its order that the "the Government does not refute the potential impact of the *Banister* decision on Mr. Lee's case." Dkt. 1356 at 3.)

Respectfully, this Court should reject the Government's efforts to raise issues for the first time on appeal as a basis for reversal. *See Clarke v. Bowen*, 843 F.2d 271, 273 (8th Cir. 1988); *Pub. Water Supply Dist. No. 3 of Laclede Cty, Mo. v. City of Lebanon*, 605 F.3d 511, 523-24 (8th Cir. 2010); *Roth v. G.D. Searle & Co.*, 27 F.3d 1303, 1307 (8th Cir. 1994).

## III. THE DISTRICT COURT CORRECTLY APPLIED *CHAMBERS V. BOWERSOX* TO MR. LEE'S CASE.

The Government's primary argument on appeal is that the district court applied an incorrect legal standard in this case. GB at 27. According to Appellant, the district court was required to find that Mr. Lee met several criteria before entering a stay, including likelihood of success on the merits, that he is likely to suffer irreparable injury, and that the balance of interests between the Government, the public, and the harm to Mr. Lee weigh in favor of a stay. GB at 26. Appellant is wrong.

### A. Appellant's argument misstates the Supreme Court's stay jurisprudence.

The Supreme Court has instructed that the standard governing stays of

15

Appellate Case: 19-3618    Page: 22    Date Filed: 01/08/2020 Entry ID: 4868783

execution varies depending upon the type of stay sought. Each stage of post-conviction litigation at which a stay is requested calls for a different stay analysis. For example, prior to the filing of a post-conviction petition, an indigent movant is entitled to a stay merely by filing a request for the appointment of habeas counsel to research and present his claims. *McFarland v. Scott*, 512 U.S. 849, 859 (1994). If a stay request occurs after the petition is filed but still involves the initial post-conviction proceeding, a stay of execution is required if the claim is not subject to summary dismissal under Rule 4 of the Rules Governing 2255 Cases (*i.e*. the claim is not plainly frivolous). *Barefoot v. Estelle*, 463 U.S. 880, 888 (1983). In such a case, the district court is "obligated to address the merits and must issue a stay to prevent the case from becoming moot." *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996). This is true regardless of the timing of the stay request or the petitioner's motive for filing. *See id.* at 320-21, 328-29 (holding that *Gomez v. United States Dist. Court for N. Dist. of Cal.*, 503 U.S. 653 (1992) has no application when the underlying pleading is not "second or successive.").

In contrast, the factors the Government wishes to impose in this case only apply to cases where the claim at issue is "second or successive." *Lonchar*, 517 U.S. at 330. Indeed every case cited by the Government in support of its argument involves either successive habeas litigation or a collateral civil challenge to the

16

Appellate Case: 19-3618     Page: 23     Date Filed: 01/08/2020 Entry ID: 4868783

method of execution or the clemency process that can arise in capital cases.[12] The issue in Mr. Lee's case, however, involves neither a successive petition nor collateral litigation. If *Banister* is decided in his favor it would unquestionably be a procedural ruling, not a substantive one, and thus Mr. Lee's Rule 60(b) pleading could not be deemed successive under *Gonzalez*. This is beyond dispute: in fact, nowhere in its briefing in this Court or the lower court does the Government ever argue that Mr. Lee's Rule 60(b) filing is a successive pleading.

Furthermore, as the district court correctly noted, a favorable decision in *Banister* would likely demonstrate that Mr. Lee did not receive the full review process to which he was entitled in his initial § 2255 proceedings. Dkt. 1356 at 3. Because this 60(b) pleading is not successive and is a motion regarding the review process of his initial § 2255 proceeding, the proper stay standard is that enunciated in *Lonchar*, not the standard advocated by the Government.

---

[12] *See Lee v. Kelley*, 854 F.3d 544 (8th Cir. 2017) (denial of funding for clemency and additional litigation); *Nooner v. Norris*, 491 F.3d 804 (8th Cir. 2007) (lethal injection challenge); *Jones v. Hobbs*, 604 F.3d 580 (8th Cir. 2010) (same); *Williams v. Chrans*, 50 F.3d 1358 (7th Cir. 1995) (denying stay request based on third federal habeas petition denied at *Williams v. Chrans,* 50 F.3d 1356 (7th Cir. 1995)); *Lee v. Hutchinson*, 854 F.3d 978 (8th Cir. 2017) (collateral challenge to clemency process); *Dunn v. Price*, 138 S.Ct. 1312 (2019) (lethal injection challenge); *Dunn v. McNabb*, 138 S.Ct. 369 (2017) (same); *McGehee v. Hutchinson*, 854 F.3d 488 (8th Cir. 2017) (same); *Winfield v. Steele*, 755 F.3d 629 (8th Cir. 2014) (collateral challenge to clemency process); *Middleton v. Roper*, 759 F.3d 867 (8th Cir. 2014) (improper successive and supplemental claims).

Appellate Case: 19-3618    Page: 24    Date Filed: 01/08/2020 Entry ID: 4868783

Rather than acknowledging the Supreme Court's differing stay standards, Appellant instead asks this Court to ignore or overrule Circuit precedent. The Government argues that *Chambers* "has never been cited as precedent and is no longer good law." GB at 34. It also tries to diminish this Court's ruling in *Chambers* by saying it is a "one-page decision (over a dissent) contain[ing] no discussion of the legal standard for evaluating a stay of execution, let alone application of the pertinent standard." *Id*. at 32. These arguments are unavailing. First, *Chambers* has not been overruled by the Supreme Court or by this Circuit. Nor have any subsequent cases called its holding into question. Because, as the district court noted, *Chambers* remains controlling law, it is binding on this panel. *See Blackorby v. BNSF Ry. Co.*, 849 F.3d 716, 722 (8th Cir. 2017) ("'[I]t is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.'") (quoting *United States v. Betcher,* 534 F.3d 820, 823 (8th Cir. 2008)).

Secondly, the district court correctly noted that the circumstances in Mr. Lee's case mirror those in *Chambers*. Rather than failing to articulate a stay standard as the Government asserts, *Chambers* directly reflects the proper standard applicable to cases addressing first federal post-conviction motions. *See Lonchar*, 517 U.S. at 320, 324, 329 (because "[d]ismissal of a first federal habeas petition is a particularly serious matter" and "the interest in permitting federal habeas review

18

of a first petition is quite strong," if a presented claim is "colorable" the court "must issue a stay to prevent the case from becoming moot."); *Otey v. Hopkins*, 972 F.2d 210, 212 (8th Cir. 1992) ("Because we do not deal with a successive or abusive petition, and the district court has made a clear statement that the claims are not frivolous, a stay is required to fully and diligently consider the issues raised.").

When habeas claims in an initial petition or motion have been dismissed on defective procedural grounds, the right to full habeas review is improperly abridged. Because *Bannister* directly implicates whether Mr. Lee received the full review process to which he is entitled, the law of this Circuit and the Supreme Court mandate a stay of execution.

**B. The Government's proposed stay standard cannot be applied in the circumstances of this case.**

The unsuitability of Appellant's proposed standard is also demonstrated by its attempt to apply it to the facts of Mr. Lee's case. The unworkability of the factors here underscore that it is not the correct standard.

*1. "Likelihood of success on the merits"*

The issue giving rise to the stay is the possibility of a forthcoming Supreme Court decision rejecting the truncated review of Mr. Lee's first post-conviction proceeding. The Government does not contest that the grant of certiorari in

19

*Banister* is relevant to Mr. Lee's case. Instead it argues that this Court should reject the merits of Mr. Lee's case regardless of how *Banister* is decided. As the Supreme Court has not yet issued an opinion, the "likelihood of success" factor can have no applicability under these circumstances. Without the guidance that the Supreme Court's *Banister* decision will provide, any conclusion about the likelihood of success must necessarily be speculative, and even any assessment of whether that case entitles Mr. Lee to additional process would be inherently premature.

The Government's brief demonstrates the difficulty of applying this factor in the present case. Appellant provides this Court with no guidance as to how this factor would apply and appears to be unsure itself. Its discussion of the "likelihood of success" test vacillates between the merits of three different targets: the newly-filed Rule 60 motion, the previously-filed Rule 59 motion, and the underlying Sixth Amendment claim. *See* GB at 37-49. (Notably, the Government did not present any of these extensive likelihood-of-success arguments to the district court. *Compare* GB at 37-49 *with* Dkt. 1355. In fact, the district court contemporaneously observed that "the Government does not refute the potential impact of the *Banister* decision on Mr. Lee's case." Dkt. 1356 at 3.) Presumably the Government would argue that it believes no matter what the standard applies to, Mr. Lee would not meet it. But this says too much: if this were indeed a proper and workable standard

20

for this case, surely the Government could clearly explain (and provide case law supporting) how it applies to the facts of this case rather than simply taking a scattershot, multifarious approach.

To the extent this factor has any application at all to the present situation, it is arguably best understood in light of *Barefoot*, where the Supreme Court discussed this very issue: the requirements for obtaining a stay of execution pending consideration of a petition for certiorari by the Supreme Court. *See Barefoot*, 463 U.S. at 895. In determining the "likelihood of success" under these circumstances, the Supreme Court held that the relevant inquiry is whether "four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari." *Id*. That standard has obviously been met here: the underlying issue—whether *Gonzalez* applies to Rule 59 motions—was already granted certiorari in *Banister*.

2. *"Undue delay"*

The "undue delay" factor requires a court to determine whether "a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson v. Campbell*, 541 U.S. 637, 650 (2004). Such a determination is irrelevant, however, where—as here—a stay is premised on a grant of certiorari. The basis of such a stay is a *future* decision by the Supreme

21

Appellate Case: 19-3618     Page: 28     Date Filed: 01/08/2020 Entry ID: 4868783

Court. If a prisoner is scheduled to be executed before that decision issues, there is no scenario under which "a claim could have been brought at such a time to allow consideration of the merits without requiring entry of a stay." Application of the "undue delay" factor under such circumstances would be illogical because the district court's ability to reach the merits of a claim is not hampered by any action of the prisoner, but rather by having to wait until the dispositive Supreme Court case is decided.

Indeed, that is precisely what happened here. Mr. Lee was set to be executed on December 9th. But it was clear that *Banister* would not be decided by then; it was not even scheduled for oral argument until December 4th. Thus, even if Mr. Lee had filed his Rule 60 motion on the very day that the cert grant in *Banister* was announced, as the Government argues he should have done, GB at 29, it would have made no difference as far as the entry of a stay was concerned. The Government cannot explain how bringing the claim earlier would have "allow[ed] consideration of the merits without requiring entry of a stay" when it still today remains impossible for *Banister* to be applied to Mr. Lee's case. It was not Mr. Lee's "undue delay" in filing his Rule 60 motion that prevented the district court from deciding his Rule 60 motion by December 9th, but rather the fact that the *Banister* decision was (and is) still pending.

22

Even assuming this factor was somehow applicable to the prior stay request, it has little relevance now. Mr. Lee's execution date has come and gone, and the Government has been enjoined by another federal court from carrying out Mr. Lee's execution. There can be no "undue delay" at this point given that there is no execution to be delayed. Indeed, the district court's consideration of Mr. Lee's Rule 60 motion no longer requires the entry of a stay of execution; it can simply hold the motion in abeyance pending the decision in *Banister*.

## C. Should this Court adopt the Government's stay standard, it must remand for factual findings.

The stay standard the Government has requested this Court to apply is incorrect for the current proceedings. However, should this Court be inclined to adopt the Government's proposed standard, it must remand the case for further proceedings. The substantial-likelihood test is a mixed question of law and fact. *Grayson v. Warden*, 869 F.3d 1204, 1239 & n. 90 (11th Cir. 2017) (reviewing denial of stay of execution). *See also Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 419 (5th Cir. 2001) ("Each of the four elements required to support a preliminary injunction, including substantial likelihood of success on the merits, presents a mixed question of fact and law.") Because the district court did not analyze Mr. Lee's case in light of the Government's proposed standard, there are no factfindings in the record for this Court to review. "When an appellate court

23

discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings." *In re Treadwell*, 637 F.3d 855 (8th Cir. 2011) (quoting *Pullman-Std. v. Swint,* 456 U.S. 273, 291-92 & n. 22 (1982)).

## IV. THE GOVERNMENT WRONGLY SEEKS TO CURTAIL CONSIDERATION OF MR. LEE'S CLAIM BY ASKING THIS COURT TO DECIDE THE CASE IN THE FIRST INSTANCE IN THIS APPEAL.

In seeking to vacate the stay of execution entered below, the Government notes repeatedly that the district court did not make findings of fact on the various issues before it, including on whether Mr. Lee will likely prevail on the merits of his claim. GB at 2, 27, 31. Rather than allow that court to do so, however, the Government asks this Court to engage in fact finding in the first instance—and to do so swiftly. That would be a mistake.

"It is not the job of appellate courts to find facts." *United States v. Searcy*, 284 F. 3d 938, 943 (8th Cir. 2002). Where, in the view of the Court of Appeals, a district court has failed to make necessary findings, the appellate court should remand. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *see also In re Treadwell,* 637 F.3d 855 (8th Cir 2011); *In re Sealed Case*, 552 F.3d 841, 845 (D.C. Cir. 2009). This is true even in instances where facts might be gleaned from

24

the appellate record, as the task is time-intensive, and Courts of Appeals are less accustomed to making the required determinations. *Pierce v. Underwood*, 487 U.S. 552, 560 (1988) (noting in particular the difficulty of determining on appeal whether the "urging" of an "opposite merits determination" is justified).

Those considerations are especially pertinent here. Appellant's brief unfortunately misstates the claims at issue, the legal standards to be used, and the facts. Statements that are obviously incorrect, but that were made hastily in *dicta*, have followed this case for years and are repeated yet again in the Appellant's brief in this Court. Relying on the Government's representations in its brief, and its "urging" as to factual determinations, would result only in further factual and legal error. A few examples follow.

### A. The Government misrepresents both the legal claim and the facts purportedly supporting it in its depiction of the underlying ineffective assistance of counsel issue.

Mr. Lee seeks to be put back in the position he was in when the District Court for the Eastern District of Arkansas erroneously deemed his Rule 59(e) motion successive. He seeks full factual review of his claim that his trial lawyers performed incompetently when they failed to challenge the use of PCL-R "psychopathy" test at his capital trial. Appellant's treatment of the underlying claim is riddled with inaccuracy and misstatement.

25

Appellate Case: 19-3618    Page: 32    Date Filed: 01/08/2020 Entry ID: 4868783

1. *The Appellant's brief addresses an invented Sixth Amendment claim of ineffective assistance rather than the one Mr. Lee has sought to litigate.*

First, the Government rewrites the claim. The issue it would like this Court to examine is whether trial counsel performed incompetently for failing "to challenge cross-examination of defense expert Dr. Cunningham about psychopathy" because there was no basis for claiming in 1999 that the PCL-R could validly predict future dangerousness in prison. GB at 38. It then goes on to say that the claim must lose because neither Dr. Cunningham nor anyone else presented "expert opinion evidence . . . that his diagnosis as a psychopath showed he would be a danger to others in prison." GB at 38. As to the first point, Mr. Lee has contended throughout that had trial counsel performed adequately—and up to the standard of the time—they would have objected to Dr. Ryan's report and risk assessment. But rather than arguing over cross-examination, had they done their job and presented their findings, Dr. Ryan would have done what he did elsewhere in the same period when confronted with the very same information: *he would have withdrawn his opinion*. The Government would not then have been able to bring the PCL-R and all of Dr. Ryan's findings into the case, whether through cross-examination of the defense expert or any other method, and the jury never would have heard this unreliable evidence. We know this is the case because this is

26

precisely what happened elsewhere when effective counsel challenged the use of

the test in other capital cases pretrial.[13] And the Government knows that is the

claim because it has been stated over and over.

### 2. *The Government presented the PCL-R evidence as part of its case for future dangerousness.*

But what is truly astounding is that Appellant now asserts to this Court that

the Lee jury heard *no expert evidence about future dangerousness in prison.*

Throughout appellate review, the Government has always claimed that the

psychopathy evidence was properly admitted because it was relevant to a

determination of future dangerousness. In fact, this Court accepted that reasoning,

and on direct appeal reversed the district court's grant of a new trial, finding that

"Lee's potential psychopathy was probative of his future dangerousness, a subject

of the government's case in chief…" *United States v. Lee*, 274 F.3d 485 (8th Cir.

2001).[14]

The jurors had two options at the penalty phase: they could have sentenced

---

[13] *See* Dkt. 1165-4.

[14] Because trial counsel did not object to the PCL-R's ability to reliably predict future danger in prison, the case went up on direct appeal on the assumption that it could. As the Government notes, GB at 19, this Court reiterated its direct appeal finding in affirming the denial of Mr. Lee's § 2255 motion, but the ineffectiveness claim addressing the PCL-R's unreliability in capital cases was not before it. *United States v. Lee*, 715 F. 3d 215, 224 (8th Cir. 2013)

27

Daniel Lee to life in prison or given him the death penalty. Yet the Government now contends that the psychopathy evidence could not have been prejudicial—and thus trial counsel could not have been ineffective—because "Dr. Ryan did not offer an opinion that Lee's diagnosis as a psychopath meant he would be a danger to others in prison." GB at 39. This is nonsensical. If the psychopathy evidence was relevant to future dangerousness (as the Government argued on direct appeal) then it was either relevant to Mr. Lee's future dangerousness *in prison*, or the Government misled this Court in prior proceedings and the evidence was improperly introduced. *See e.g., United States v. O'Reilly*, 545 F. Supp. 2d. 630, 638 (E. D. Mich. 2008) ("[w]hen the only alternate punishment to death is life imprisonment without the possibility of parole[]…district courts appear to have uniformly held that the government is limited to presenting evidence on future dangerousness [as it applies to life in prison]") (quoting *United States v. Rodriguez*, No. 2:04–CR–55, 2006 WL 487117, at \*5 (D.N.D. Feb. 28, 2006)); *United States v. Peoples*, 74 F. Supp. 2d. 930, 932 (W.D. Mo. 1999) ("dangerousness should not be measured in the same manner as if a defendant were to be 'uncaged'; life in prison without parole, a firmly fixed federal requirement, must mean that the focus of the dangerousness analysis is on prison conditions."); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 487-488 (E.D. Pa. 2001)

28

Appellate Case: 19-3618    Page: 35    Date Filed: 01/08/2020 Entry ID: 4868783

("[T[he jury will be instructed that it is to evaluate the defendants' 'future dangerousness' in the context of life imprisonment, and the government will be requested to limit its sentencing phase evidence to that which is relevant to a context of life imprisonment.").

The Government's about-face in this Court is also wholly belied by the trial record. The prosecution built its case for death around the cross-examination of Dr. Cunningham. *Lee*, 89 F. Supp. 2d at 1019-20 (noting that "the Government's case-in-chief was brief," and its examination of Dr. Cunningham "extensive").[15]  From its opening argument, the Government linked the psychopathy finding to the future danger aggravator:

> [Mr. Lee's] psychological profile … in the end will convince you that as he sits here today and will be in the future, Mr. Lee is a dangerous man. That, ladies and gentlemen, is a lot of what this trial will be about.

Tr. 7379. The argument continued in this vein: "In the end, what the evidence that will be presented will establish is that Mr. Lee is a psychopath. I don't mean that in a common term. I do mean that in the medical use." Tr. 7381. And "[w]e will

---

[15] *See also id*. at 1019-20 (trial court noting it was now "apparent from the Government's opening statement and the brevity of its own direct case on the issue of future dangerousness that the Government intended from the beginning to make its most compelling showing of future dangerousness through its cross-examination of Dr. Cunningham and its 'rebuttal' testimony of Dr. Ryan").

29

prove in this case to you that Mr. Lee, because of his psychological profile, who he is and who he will be for years to come, is dangerous and will continue to be dangerous." Tr. 7383.

The Government's "proof" was elicited through its protracted questioning of the defense witness about the PCL-R test that its own expert had administered. It took Dr. Mark Cunningham though numerous aspects of the test; discussed its implications with the expert ("a psychopath is five times more likely to be violently dangerous. . . , correct?" Tr. 7810); and even had him burnish the credentials of its own expert, Dr. Thomas Ryan. The prosecution reminded the jurors repeatedly in closing of its questioning of Dr. Cunningham, leaving them in the end with

> Can't we all, with the benefit of hindsight, look at this and see, My God, look at what the *diagnosis* was.

Tr. 7968 (emphasis added). For the Government to pretend now that no link was made between expert evidence and future danger in prison—the only "future" the jury could leave Daniel Lee if it did not sentence him to die—is to distort this capital trial beyond recognition.[16] This Court should decline this spurious

---

[16] Having fabricated a claim and an outcome, the Government similarly invents a "strategy" for trial counsel. GB at 41 ("Trial counsel's strategy eventually succeeded when the district court adopted the defense position and excluded evidence 'of psychopathy, the Hare psychopathy test, and any reference to the

30

Appellate Case: 19-3618    Page: 37    Date Filed: 01/08/2020 Entry ID: 4868783

invitation.

> 3. *Had trial counsel prepared and performed effectively, Mr. Lee's jury would not have heard the expert PCL-R evidence, and he would not have been sentenced to death.*

Finally, in another attempt to minimize the effect of the PCL-R testimony, the Government makes much of the standards for admission of evidence at the penalty phase of a capital case, citing the Federal Death Penalty Act, *Barefoot v. Estelle*, 463 U.S. 880 (1983), and this Court's findings on appeal. GB at 15, 42-44. First, neither 18 U.S.C. § 3593(c) nor any other provision of the law allows for the admission of evidence that is not "relevant to the sentence." For the Government to claim as it did at trial that the psychopathy evidence was relevant to Mr. Lee's future dangerousness, it must admit that it was relevant to his future in prison, a fact it now seeks to disavow. Second, this Court's analysis of the PCL-R's probity versus prejudice on direct appeal has no bearing on the very different test required by a Sixth Amendment ineffective assistance of counsel claim. *United States v.*

---

defendant being a, quote, psychopath, unquote.' Tr. 7836.") Appellant neglects to note that this occurred *after* all of the questioning of Dr. Cunningham had already taken place. The damage had been done, and the Government made the most of it in closing. Mr. Lee's claim has consistently been that the PCL-R had no role to play in a capital case, and had trial counsel conducted a reasonable investigation and made the proper objections, Dr. Ryan would have agreed and withdrawn the opinion that formed the basis of this evidence.

31

*Lee*, 274 F. 3d 485, 495 (8th Cir. 2001). The former is a simple balancing test that looks at whether the probative value of evidence is outweighed by the danger of creating unfair prejudice. *See* § 3593(c). But the Sixth Amendment claim asks whether there is a reasonable probability of a different result had defense counsel performed adequately. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Here, the case in aggravation would have looked very different had Dr. Ryan withdrawn his opinion and the jury heard no evidence or argument on Mr. Lee's "diagnosis." Indeed, the judge who presided over the trial has already found it "very questionable" whether Mr. Lee would have been sentenced to death absent the PCL-R testimony. *Lee*, 89 F. Supp. 2d at 1031.

## B. The Government misrepresents the Rule 59 litigation that is the subject of this action.

The Government's presentation of the Rule 59 litigation is similarly unreliable.

First, Appellant now contends that Mr. Lee raised his ineffectiveness claim "for the first time" in that motion to alter or amend. GB at 17. That assertion is erroneous: not only did his Rule 59 motion address an issue raised in his §2255 motion, but the Government also acknowledged this at the time and responded accordingly. Its opposition to the motion started with "Lee's Rule 59(e) motion must be denied because it constitutes a second or successive application for

32

Section 2255 relief, which may be considered by this Court only upon authorization by the U.S. Court of Appeals for the Eighth Circuit." *United States v. Lee*, Case 4:97-cr-00243-GTE (E.D. Ark. Oct. 20. 2008), Dkt. 1170, at 1. It then relied (erroneously) on *Gonzalez v. Crosby*, 545 U.S. 524 (2005), to equate Rule 59(e) motions with those filed pursuant to Rule 60(b), and on this Court's precedent. Dkt. 1170 at 2-5.  The Government then affirmed that all of the Rule 59 claims dealt with the district court's "previous resolution of a claim *on the merits*" (emphasis in original; quotation omitted). Dkt. 1170 at 4.  On that basis, the opposition then asked the district court to deny the Rule 59(e) motion as successive.

The district court obliged. It found the Rule 59 claims successive. *United States v. Lee*, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010). At the time, this Court declined to grant a COA on whether it was proper for the district court to apply § 2255(h)'s successor rules to a motion filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure—the issue to be decided in *Banister*. More recently, this Court reiterated the district court's finding that the question of trial counsel's ineffectiveness regarding the PCL-R evidence had been raised in his initial habeas petition. *United States v. Lee*, 792 F.3d 1021, 1023 (8th Cir. 2015) ("After consideration, we conclude that Lee's Rule 60(b) motion was correctly denied for

33

lack of precertification since it was seeking to reopen a claim which had been raised in his initial habeas petition...").

Second, the Government would like to argue that Mr. Lee should not now be given the benefit of any favorable decision in *Banister* because the district court, in addition to finding the Rule 59(e) motion successive, also deemed it meritless. GB at 18. *See also id*. at 48-49 (arguing that the Rule 59(e) motion "was properly denied even without the restrictions on second or successive § motions"). But the district court could not rule that the claim was a successor in violation of § 2255(h) and then go on to rule on the merits because it lacked jurisdiction to do so. Where a habeas court concludes that the prisoner should have followed the gatekeeping requirements and sought pre-authorization for filing, it may not nevertheless go on to decide the claims raised. *See Burton v. Stewart*, 549 U.S. 147, 149 (2007) (where habeas petitioner failed to seek authorization and filed successive petition, that "failure deprived the District Court of jurisdiction to hear his claims"). Courts have applied this doctrine when determining that a post-judgment motion in a habeas case is successive. *See*, *e.g.*, *Leal Garcia v. Quarterman*, 573 F.3d 214, 224-25 (5th Cir. 2009) (vacating district court's merits determination "based on its erroneous assumption of hypothetical jurisdiction"); *Phelps v. Alameida,* 569 F.3d 1120, 1127-28 (9th Cir. 2009) (noting that order holding 60(b) to be successive

34

Appellate Case: 19-3618    Page: 41    Date Filed: 01/08/2020 Entry ID: 4868783

petition and discussing the merits of the motion violated "unequivocal Supreme Court and Ninth Circuit precedents rejecting the doctrine of 'hypothetical jurisdiction'").

Finally, the Government's own brief highlights the dangers of making cursory fact finding without careful review of a full record. In seeking to uphold the district court's commentary on the merits, the Government points particularly to this finding by the district court:

> However, the claim, even if considered on the merits, is problematic. Dr. Ryan's recently submitted declaration describes how, *in the Spring of 2000*, he concluded that it was inappropriate to rely on the PCL–R to assess the future dangerousness of capital defendants. *The jury returned its verdict of death against Petitioner on May 14, 1999.* Petitioner has not explained how counsel could have been expected, almost one year before Dr. Ryan himself rejected the PCL–R as an effective predictor of future conduct, to challenge the scientific underpinnings for his testimony.

*United States v. Lee*, 2010 WL 5347174, *6 (E.D. Ark. Dec. 22, 2010) (emphasis added); GB at 18. This was, however, only one part of Dr. Ryan's discussion of the PCL-R; in another habeas case, he testified that there was a lack of scientific support for its use in capital cases at least as early as 1998—the date of another case in which he testified and later withdrew his opinion. *See Stitt v. United States*, 369 F. Supp. 2d 679, 699-700 (E.D. Va. 2005) (habeas court addressing Dr. Ryan's reversal of testimony given at 1998 trial predicting future danger on the basis of

35

Appellate Case: 19-3618     Page: 42     Date Filed: 01/08/2020 Entry ID: 4868783

the PCL-R). This was a year *before* Daniel Lee's trial. This critical, uncorrected error on the part of the district court as to timing has unfortunately followed the case throughout (thanks largely to the Government's repeating it, without correction).

This Court should not accept the Government's invitation to ride roughshod over the facts in this capital case.

**C. The Government erroneously encourages this Court to decide the merits of the Rule 60(b) motion in the first instance.**

As previously discussed, if *Banister* is decided favorably to Mr. Lee, his Rule 60(b) motion will provide the vehicle for reopening the judgment and providing him the process he was originally denied. The Government has never contested that this is a proper Rule 60(b) motion. It is also undisputed that the district court has not yet considered or ruled on the pending Rule 60(b) motion.

Despite this, the Government asks this Court to reach out and decide the motion in the first instance. It bases its request on several erroneous assertions. First, the Government incorrectly asserts that *Gonzalez* stands for the proposition that changes in decisional law are not cognizable under Rule 60(b)(6). *See* GB at 47-48. This is a gross misreading of that case. There, the petitioner's Rule 60 motion was denied because, based on the facts of his case, the petitioner's "lack of diligence" in raising a claim based on the professed change in law demonstrated

36

that it did not constitute an "extraordinary circumstance" justifying relief. *Gonzalez*, 545 U.S. at 537.[17] And this merits denial by the Supreme Court occurred only after a district court order, a grant of COA in the circuit, rehearing of the COA grant, and *en banc* review in the circuit.

More recently in *Buck v. Davis*, 137 S. Ct. 759 (2017), the Supreme Court reaffirmed the fact-intensive nature of a Rule 60(b) inquiry. The Fifth Circuit had rejected Mr. Buck's 60(b) request explicitly stating that "a change in decisional law does not qualify" as an extraordinary circumstance. *Buck v. Stevens*, 623 Fed. Appx. 668, 672 (5th Cir. 2015). The Supreme Court reversed, noting that while a change in decisional law is usually not *by itself* an extraordinary circumstance meriting relief under Rule 60(b)(6), a court may properly consider it among other factors in determining whether the requisite showing has been made. *See Buck*, 137 S. Ct. at 767 (noting that petitioner alleged "change in the law" among multiple factors as establishing extraordinary circumstances for purposes of Rule 60(b)(6)). *See also Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014) (rejecting *per se* rule that a

---

[17] By contrast, Mr. Lee has diligently pursued his claim that *Gonzalez* does not apply to Rule 59(e) motions. Indeed, he raised the very same issue on which certiorari was granted in *Banister* as part of his original Rule 59 litigation in the district court. *See* Dkt. 1172.

37

change in decisional law is inadequate, either standing alone or in tandem with other factors, to invoke relief from a final judgment under 60(b)(6)).[18]

In any event, the Government's discussion of whether Mr. Lee's 60(b) motion establishes "extraordinary circumstances" is premature because that issue goes to the *merits* of the 60(b) motion. *See Buck*, 137 S. Ct. at 774. But here, the district court has yet to consider the 60(b) motion on the merits; the only ruling it issued below concerned Mr. Lee's request to stay his execution and hold the Rule 60(b) motion in abeyance pending a decision in *Banister*. The Government cannot leapfrog the district court and seek a ruling on the merits for the first time on appeal.

This is particularly so given that the resolution of a Rule 60(b) motion is highly fact-bound and depends on case-specific equitable principles. *See Cox*, 757 F.3d at 123-24; *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefits Fund*, 249 F.3d 519, 529 (6th Cir. 2001) ("[T]he decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance

---

[18] It should be noted that Mr. Lee's Rule 60(b) motion does not rely solely on a change in decisional law to establish extraordinary circumstances, but rather on a variety of case-specific factors, including that it would be a manifest injustice to allow Mr. Lee to be executed on the basis of "scientific" evidence that has been thoroughly debunked by the forensic psychology community, that the Government's own expert has repudiated, and that the Government itself no longer even seeks to introduce in its capital prosecutions. *See* Dkt. 1352.

38

numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts."). Moreover, as the district court correctly concluded, resolution of the merits of Mr. Lee's Rule 60(b) motion will depend on the outcome in *Banister*. That is precisely why it granted Mr. Lee's request to hold the Rule 60(b) motion in abeyance pending a decision in *Banister.*

Crucially, the Government has not appealed that aspect of the district court's order; it only contests whether the district court properly stayed Mr. Lee's execution. The district court's decision to hold the 60(b) motion in abeyance was well within its discretion. *See Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 880 n.6 (1998) (quoting *Landis v. North American Co*., 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). In fact, it is the routine practice of the Eighth Circuit to hold cases in abeyance pending the resolution of dispositive litigation in the Supreme Court. *See*, *e.g*., *Johnson v. United States*, 774 Fed. Appx. 334 (8th Cir. 2019) (appeal from denial of § 2255 relief held in abeyance pending *United States v. Davis*, 139 S. Ct. 2319 (2019); *Nelson v. United States*, 909 F.3d 964, 969 (8th Cir. 2018) (petition for rehearing of denial of certificate of

39

appealability in capital § 2255 held in abeyance pending *Buck v. Davis*, 137 S. Ct. 759 (2017)); *United States v. Knowles*, 817 F.3d 1095, 1096 (2016) (appeal held in abeyance pending *Lockhart v. United States*, 136 S. Ct. 958 (2016)); *see also* Dkt. 1353 at 3 n.5 (collecting cases). The same is true of the district courts of this Circuit. *Id*. at n.6 (collecting cases).

The Government's attempt to litigate the merits of the 60(b) motion in this Court is simply an effort to do an end-run around the district court's order holding the Rule 60(b) motion in abeyance pending the decision in *Banister*. Respectfully, this Court should reject that gambit and allow the district court to consider Mr. Lee's motion in the first instance.

### D. The Government misrepresents the balance of the equities.

The Government maintains, in the context of legal argument about the balance of the equities, that the victims' family has an interest in the "timely enforcement" of Mr. Lee's death sentence. GB at 52. That is not the case, as the Government well knows. The family members of the victims have stressed their opposition to Mr. Lee's execution, and did so to the DOJ again just weeks before the Government filed this appeal.[19] It is incorrect, disingenuous and insulting to

---

[19] The victims' family members made their views known directly in various submissions to the DOJ. The matriarch of the family, Earlene Peterson, conveyed her wishes that the execution not move forward in a video statement submitted to

40

those family members for the Government to insist otherwise.

## CONCLUSION

The district court did not abuse its discretion in granting a stay of Mr. Lee's

December 9, 2019 execution. That said, there is no case or controversy left for this

Court decide. Mr. Lee's execution date has passed. No new execution date has

been scheduled. And even if one were announced tomorrow, there is a separate

order enjoining the Government from carrying out Mr. Lee's execution. The

underlying order staying Mr. Lee's execution has been rendered moot by these

events, and accordingly this appeal should be dismissed as moot, as well.

---

the Administration, stating that an execution would dishonor her daughter's and granddaughter's names. *See* https://vimeo.com/359661291 (last visited Jan. 7, 2020). Family members were also quoted in an article by *The New York Times*. *See* Campbell Robertson, "She Doesn't Want Her Daughter's Killer To Be Put To Death. Should the Government Listen?," New York Times (Oct. 29, 2019), https://www.nytimes.com/2019/10/29/us/arkansas-federal-death-penalty.html (last visited on Jan. 7, 2020). Several of the family members also wrote an op-ed the day before the Government filed its Notice of Appeal in this case, again stressing their opposition to the execution of Mr. Lee. *See* Earlene Peterson, Kimma Gurel and Monica Veillette, "Attorney General William Barr Claims This Execution Is For Us—But We Don't Want It," Newsweek (Dec. 5, 2019), https://www.newsweek.com/william-barr-wants-federal-execution-victim-families-not-us-1475764) (last visited Jan. 7, 2020).

41

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FRAP 32(g) AND LOCAL RULE 28A(h)**

1. This brief contains 8.734 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced, 14-point Times New Roman typeface using Microsoft Office Word 2016.

3. This brief and the addendum have been scanned for viruses and are virus-free.

/s/Morris H. Moon
MORRIS H. MOON
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(713) 880-3556
Morris_Moon@fd.org

42

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief and Addendum with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on January 7, 2020. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/Morris H. Moon
MORRIS H. MOON
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(713) 880-3556
Morris_Moon@fd.org

Appellate Case: 19-3618    Page: 50    Date Filed: 01/08/2020 Entry ID: 4868783