No. 19-3618

In the
# United States Court of Appeals
for the Eighth Circuit

———————————

UNITED STATES OF AMERICA,
Appellant,

v.

DANIEL LEWIS LEE,
Appellee.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
District Court No. 4:97-CR-243 (Baker, J.)

———————————

**REPLY BRIEF FOR THE UNITED STATES**

———————————

CODY HILAND
United States Attorney
Eastern District of Arkansas

MICHAEL GORDON
Assistant United States Attorney
Eastern District of Arkansas

BRIAN A. BENCZKOWSKI
Assistant Attorney General

JOHN P. CRONAN
Principal Deputy Assistant Attorney General

JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1258
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................iii

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................ 2

I.    This Appeal Is Not Moot ...........................................................2

II.   Lee Must Satisfy the Normal Stay Requirements, Including a Strong Likelihood of Success on the Merits ...........................5

III.  Application of the Correct Legal Standard Requires Vacatur .......9

    A.   The Stay Should Be Vacated Because the Court Did Not Find, and Lee Did Not Demonstrate, Likely Success on the Merits.......................................................9

        1.   The Government Did Not Waive the Requirement of Likely Success on the Merits.......... 10

        2.   The Likelihood-of-Success Standard Readily Applies Here ......................................................... 13

        3.   Lee Does Not Show That He Is Likely to Overturn His Sentence via His Rule 60(b) Motion.................................................................. 16

            a.   The Underlying Ineffective-Assistance Claim Lacks Merit........................................ 16

            b.   Lee Cannot Use Rule 59(e) to Raise New Evidence He Could Have Raised in His § 2255 Motion .............................................. 22

            c.   Lee Cannot Demonstrate Extraordinary Circumstances.............................................. 23

    B.   The Stay Should Be Vacated Because Of Lee's Undue Delay ..................................................................... 26

i

C.   The Remaining Equities Further Weigh Against a
Stay.................................................................................. 27

CONCLUSION.......................................................................................... 28

CERTIFICATE OF COMPLIANCE ......................................................... 29

CERTIFICATE OF SERVICE ................................................................... 30

ii

Appellate Case: 19-3618    Page: 3    Date Filed: 01/13/2020 Entry ID: 4870675

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Thaler*,
  679 F.3d 312 (5th Cir. 2012) ........................................................................ 7

*Ali v. Cangemi*,
  419 F.3d 722 (8th Cir. 2005) (en banc) ...................................................... 4

*Barefoot v. Estelle*,
  463 U.S. 880 (1983) ......................................................................... 5, 15, 21

*Bedford v. Bobby*,
  645 F.3d 372 (6th Cir. 2011) ........................................................................ 7

*Buck v. Davis*,
  137 S. Ct. 759 (2017) ........................................................................... 24, 25

*Burton v. Fabian*,
  612 F.3d 1003 (8th Cir. 2010) ................................................................... 25

*Chambers v. Bowersox*,
  197 F.3d 308 (8th Cir. 1999) ........................................................................ 9

*Charles v. Allstate Ins. Co.*,
  932 F.2d 1265 (8th Cir. 1991) ................................................................... 10

*Clay v. Bowersox*,
  628 F.3d 996 (8th Cir. 2011) ........................................................................ 7

*Clayton v. Luebbers*,
  780 F.3d 903 (8th Cir. 2015) ........................................................................ 7

*Cornell v. Nix*,
  119 F.3d 1329 (8th Cir. 1997) ................................................................... 25

*Crutsinger v. Davis*,
  936 F.3d 265 (5th Cir.), *cert. denied*, 140 S. Ct. 2 (2019) ........................ 5

Appellate Case: 19-3618    Page: 4    Date Filed: 01/13/2020 Entry ID: 4870675

*Davis v. Kelley*,
  855 F.3d 833 (8th Cir. 2017) ............................................................*passim*

*Dunn v. McNabb*,
  138 S. Ct. 369 (2017) .............................................................................. 9

*Epp v. Kerrey*,
  964 F.2d 754 (8th Cir. 1992) ................................................................... 4

*Ford v. Wainwright*,
  477 U.S. 399 (1986)................................................................................. 7

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013)................................................................................... 2

*Gonzalez v. Crosby*,
  545 U.S. 524 (2005)................................................................................. 6

*Hartford Fire Ins. Co. v. Clark*,
  562 F.3d 943 (8th Cir. 2009) ................................................................ 11

*Hill v. McDonough*,
  547 U.S. 573 (2006)............................................................................ 5, 8

*Hintz v. JPMorgan Chase Bank, N.A.*,
  686 F.3d 505 (8th Cir. 2012) ................................................................ 11

*Jones v. Hobbs*,
  604 F.3d 580 (8th Cir. 2010) ................................................................... 9

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
  567 U.S. 298 (2012)................................................................................. 2

*Lee v. United States*,
  135 S. Ct. 72 (2014) .............................................................................. 15

*Lee v. Watson*,
  No. 19-3399, 2019 WL 6718924 (7th Cir. Dec. 6, 2019) ..................... 27

*Lonchar v. Thomas*,
  517 U.S. 314 (1996)............................................................................ 5, 6

iv

*McFarland v. Scott*,
512 U.S. 849 (1994) .................................................................................5

*Nken v. Holder*,
556 U.S. 418 (2009) .................................................................................5

*PCTV Gold, Inc. v. SpeedNet, LLC*,
508 F.3d 1137 (8th Cir. 2007) ................................................................ 11

*Seniority Research Grp. v. Chrysler Motor Corp.*,
976 F.2d 1185 (8th Cir. 1992) ................................................................ 10

*Stevenson v. Blytheville Sch. Dist. No. 5*,
762 F.3d 765 (8th Cir. 2014) ...................................................................2

*United States v. Coonce*,
932 F.3d 623 (8th Cir. 2019) .................................................................. 21

*United States v. Lee*,
274 F.3d 485 (8th Cir. 2001) .................................................................. 20

*United States v. Lee*,
715 F.3d 215 (8th Cir. 2013), *cert. denied*, 574 U.S. 834 (2014) ...................6

*United States v. Lee*,
792 F.3d 1021 (8th Cir. 2015) ...........................................................22, 23

*United States v. Metro. St. Louis Sewer Dist.*,
440 F.3d 930 (8th Cir. 2006) .............................................................13, 23

*United States v. Patterson*,
684 F.3d 794 (8th Cir. 2012) .................................................................. 19

*United States v. Ritchie Special Credit Investments, Ltd.*,
620 F.3d 824 (8th Cir. 2010) .................................................................. 10

*Universal Title Ins. Co. v. United States*,
942 F.2d 1311 (8th Cir. 1991) ................................................................ 11

*Weitz Co., LLC v. Lloyd's of London*,
574 F.3d 885 (8th Cir. 2009) .................................................................. 11

v

*Williams v. Kelley*,
    854 F.3d 1002 (8th Cir. 2017)..................................................... 7, 8, 13, 27

*Workman v. Bell*,
    484 F.3d 837 (6th Cir. 2007) ................................................................. 7

**Statutes**

28 U.S.C § 2244 ........................................................................................6

28 U.S.C. § 2255 ..............................................................................*passim*

vi

# INTRODUCTION

The district court's failure to apply the normal standard for obtaining a stay pending legal proceedings—which Lee concedes (Lee Br. 23)—requires vacatur of the court's stay order. And even if the court had applied the correct standard, it would have had to deny a stay. Lee has no likelihood, let alone a strong likelihood, of overturning his death sentence through his Rule 60(b) motion. And he could have brought the motion and sought a stay at least four months earlier but instead unnecessarily waited until three calendar days (and one business day) before the scheduled date of his execution.

Lee's arguments in response confirm his inability to satisfy the standard for obtaining a stay, as he largely seeks to avoid a consideration of the merits of his Rule 60(b) motion and his undue delay. He instead argues that this appeal is moot, the likelihood-of-success requirement does not apply, the government failed to preserve its arguments on likelihood of success, and the likelihood-of-success requirement is difficult to apply in this case. He similarly claims that more factual development is needed and the government misstates his arguments. And he provides no explanation for his delay in seeking a stay and instead argues that this Court cannot even consider that delay. Lee's attempts to evade the requirements for a stay are unavailing. The district court's stay order should be vacated.

1

# ARGUMENT

## I.  This Appeal Is Not Moot

Lee contends (Br. 10-13) that the Court should dismiss this appeal as moot. His arguments do not withstand scrutiny.

The case-or-controversy requirement of Article III requires that the parties to litigation continue to have a "personal stake in the outcome of the lawsuit" throughout the duration of the litigation. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (internal quotation marks omitted). An injunction therefore may become moot on appeal, such as when "the effective time period of the injunction has passed." *Stevenson v. Blytheville Sch. Dist. No. 5*, 762 F.3d 765, 768 (8th Cir. 2014) (internal quotation marks and emphasis omitted). But "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307-08 (2012) (internal quotation marks omitted).

The government continues to have a stake in the outcome of this appeal. The government intends to move forward with Lee's execution as long as no court order prohibits it. The district court's stay order, however, "directs that the sentence of death as to Daniel Lewis Lee not be carried out until further order of this Court, the Eighth Circuit, or the Supreme Court." Dkt. 1356, at 3-

Appellate Case: 19-3618     Page: 9     Date Filed: 01/13/2020 Entry ID: 4870675

4. The government has a substantial interest in carrying out its important responsibility to enforce Lee's capital sentence and therefore continues to have a concrete interest in vacating this stay.

Lee contends that the stay order is moot because it "stayed the execution of Mr. Lee scheduled for December 9, 2019," and "[t]hat date has come and gone, and no new execution date has been set." Lee Br. 10-11. By its express terms, however, the stay order remains in effect and prohibits the United States from carrying out Lee's death sentence indefinitely "until further order" of the district court, this Court, or the Supreme Court. Thus, even if the preliminary injunction in the execution protocol litigation in the District of Columbia were vacated, the United States still could not proceed with Lee's execution absent an order from the district court lifting the stay or an order from this Court or the Supreme Court vacating it. An opinion vacating the stay order would not be "advisory" (Lee Br. 12) but instead would remove an obstacle that currently precludes the government from carrying out Lee's capital sentence.

Contrary to Lee's contention (Br. 11-12), this appeal is not moot merely because the preliminary injunction in the execution protocol litigation also currently bars the government from moving forward with Lee's execution. The injunction in the protocol litigation and the stay order in this case rest on different grounds, and the government must eliminate both the protocol

3

injunction and the stay order below in order to carry out Lee's execution. The government therefore continues to have an ongoing interest in the outcome of both cases. If Lee's mootness argument were correct, it appears that the stay order in this case and the preliminary injunction in the District of Columbia would both be moot and the government would be unable to vacate either on appeal. Lee provides no authority to support such an absurd result.

There is also no basis to dismiss this appeal as moot for prudential reasons on the alleged grounds (Lee Br. 12-13) that it involves "uncertainties" or an "inability to provide an effective remedy." *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) (en banc). To the contrary, the government intends to carry out Lee's execution but the district court's order precludes the government from doing so, and therefore this Court can grant the government the relief it desires by vacating that order.

In any event, even if this appeal were moot, as Lee contends, the proper remedy would be to vacate the district court's stay order. When a case "becomes moot pending appeal, the appellate court normally vacates the order being appealed and remands to the district court with instructions to dismiss the case as moot." *Epp v. Kerrey*, 964 F.2d 754, 756 (8th Cir. 1992).

4

## II. Lee Must Satisfy the Normal Stay Requirements, Including a Strong Likelihood of Success on the Merits

A "stay of execution is an equitable remedy," and a defendant seeking a stay of execution pending additional legal proceedings "must satisfy all of the requirements for a stay." *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009) (discussing stay requirements). That includes a showing that a strong likelihood exists of the defendant obtaining relief in the pending legal proceedings and also that the balance of equities weigh in favor of a stay, which creates "a strong equitable presumption against the grant of a stay" when the defendant delays unnecessarily in seeking the stay. *Hill*, 547 U.S. at 584 (internal quotation marks omitted).

Lee acknowledges (Br. 23) that the district court did not apply these standards but contends (Br. 15-19) that the standards do not apply here and that he is entitled to a stay as long as his Rule 60(b) motion is "colorable" and not "plainly frivolous." Lee relies on *Lonchar v. Thomas*, 517 U.S. 314 (1996), *McFarland v. Scott*, 512 U.S. 849 (1994), and *Barefoot v. Estelle*, 463 U.S. 880 (1983). Those cases, however, "stand for the unremarkable proposition that a [defendant] may not be executed" before the defendant has received a round of federal collateral review. *Crutsinger v. Davis*, 936 F.3d 265, 272 (5th Cir.), *cert. denied*, 140 S. Ct. 2 (2019). In other words, these cases discuss the principles

5

Appellate Case: 19-3618     Page: 12     Date Filed: 01/13/2020 Entry ID: 4870675

that apply when a court "is faced with a request for a stay in a *first* federal habeas case." *Lonchar*, 517 U.S. at 320 (emphasis added).

Lee's first collateral attack on his conviction and sentence ended years ago. This Court long ago affirmed the district court's denial of Lee's motion collaterally attacking his conviction and sentence under 28 U.S.C. § 2255. *United States v. Lee*, 715 F.3d 215 (8th Cir. 2013), *cert. denied*, 574 U.S. 834 (2014). *Lonchar* therefore does not assist Lee, and instead, Lee must satisfy the regular standards for a stay pending additional legal proceedings.

Lee suggests (Br. 17) that his Rule 60(b) motion is a part of his first round of collateral review—and therefore he is entitled to a stay under *Lonchar* while the motion is litigated—because the motion seeks to reopen his initial § 2255 proceedings and alleges a procedural defect in those proceedings and therefore does not qualify as a second or successive § 2255 motion.[1] This Court and others have held, however, that the normal stay standard applies when a

---

[1] Defendants seeking collateral relief face restrictions on "second or successive" filings. 28 U.S.C § 2244(b) & § 2255(h). A Rule 60(b) motion to reopen a judgment denying collateral relief qualifies as a second or successive filing if it attacks the "substance of the federal court's resolution of a claim on the merits," *Gonzalez v. Crosby*, 545 U.S. 524, 532 & n.5 (2005), but not if it attacks "some defect in the integrity of the" collateral proceedings, for example if it asserts that a procedural "ruling which precluded a merits determination was in error," *id.* at 532 & n.4. We assume for present purposes that Lee's Rule 60(b) motion is not a second or successive § 2255 motion.

6

defendant seeks a stay of execution based on a Rule 60(b) motion that attempts to reopen completed collateral-review proceedings, even if the Rule 60(b) motion attacks a procedural defect in those proceedings and does not qualify as a second or successive collateral attack. *See Williams v. Kelley*, 854 F.3d 1002, 1007 (8th Cir. 2017) (per curiam); *Davis v. Kelley*, 855 F.3d 833, 834 (8th Cir. 2017) (per curiam); *Adams v. Thaler*, 679 F.3d 312, 318-20 (5th Cir. 2012); *Workman v. Bell*, 484 F.3d 837, 839-40 (6th Cir. 2007); *see also Clay v. Bowersox*, 628 F.3d 996, 997-98 & n.2 (8th Cir. 2011) (per curiam) (applying regular stay standard to a supplemental habeas petition that was not treated as second or successive).[2]

In *Williams v. Kelley*, for example, after the defendant received an initial round of collateral review, he filed a Rule 60(b) motion to reopen his habeas proceedings, claiming that intervening Supreme Court decisions had removed procedural obstacles to the consideration of ineffective-assistance claims in his

---

[2] This Court and others have also applied the regular stay standard when a defendant seeks a stay after filing a habeas petition raising a claim under *Ford v. Wainwright*, 477 U.S. 399 (1986) (holding that it is unconstitutional to execute a mentally-incompetent prisoner), even though such habeas petitions are not considered second or successive when filed after an initial round of collateral review because a *Ford* claim does not become ripe until a defendant's execution is imminent. *See Clayton v. Luebbers*, 780 F.3d 903, 904 (8th Cir. 2015) (per curiam); *Bedford v. Bobby*, 645 F.3d 372, 377 (6th Cir. 2011) (per curiam) (distinguishing *Lonchar*).

Appellate Case: 19-3618   Page: 14   Date Filed: 01/13/2020 Entry ID: 4870675

habeas petition. 854 F.3d at 1007. The district court denied the motion but granted a certificate of appealability. *Id.* This Court rejected the defendant's argument that he was entitled to a stay of his execution pending full briefing of his appeal merely because the district court had granted a certificate of appealability, concluding that this argument was "contrary to controlling Supreme Court decisions," which required the defendant to satisfy the regular stay standard, including a strong likelihood of success on the merits. *Id.* (citing *Hill*, 547 U.S. at 584). The Court applied this standard even though it concluded that at least some of the claims in the defendant's Rule 60(b) motion were not second or successive. *Id.* at 1008-09. And the Court determined that the defendant was not entitled to a stay because his Rule 60(b) motion was not likely to succeed on the merits. *Id.* The Court applied a similar analysis in *Davis*, 855 F.3d at 834.

This Court's decisions in *Williams* and *Davis* establish that Lee too must satisfy the regular stay standard, which includes a showing of likely success on the merits. Like the defendants in *Williams* and *Davis*, Lee received an initial round of collateral review: In all three cases, the district court denied collateral relief, and this Court affirmed. The defendants in all three cases later filed Rule 60(b) motions asserting error in a procedural ruling during their initial collateral review that precluded a merits determination of ineffective-assistance

8

claims, and all three defendants sought a stay pending the litigation of their Rule 60(b) motions. Like the defendants in *Williams* and *Davis*, Lee is entitled to a stay only if he can satisfy the regular stay standard.

In advocating a different standard, Lee continues (Br. 18) to rely on this Court's decision in *Chambers v. Bowersox*, 197 F.3d 308 (8th Cir. 1999) (per curiam). *Chambers* does not provide binding or persuasive precedent for the reasons outlined in the government's opening brief and also because it involved an appeal of the denial of the defendant's first collateral attack, *id.* at 309, not a Rule 60(b) motion to reopen a completed collateral challenge. *Williams* and *Davis* provide the relevant standard in this case, not *Chambers*.

The standard Lee proposes would permit capital defendants to repeatedly delay their executions through Rule 60(b) motions long after their sentences have been affirmed on direct appeal and collateral review. This Court has never adopted such a standard and should not do so here.

## III. Application of the Correct Legal Standard Requires Vacatur

### A. The Stay Should Be Vacated Because the Court Did Not Find, and Lee Did Not Demonstrate, Likely Success on the Merits

The district court did not find that Lee's Rule 60(b) motion had a strong likelihood of success on the merits, and Lee did not even attempt to make that showing. Those failures alone require vacatur. *See Dunn v. McNabb*, 138 S. Ct. 369 (2017); *Jones v. Hobbs*, 604 F.3d 580, 581-82 (8th Cir. 2010) (per curiam).

9

Lee largely attempts to avoid any consideration of the merits, instead arguing that the government waived the likelihood-of-success requirement (Br. 13-15); the likelihood-of-success requirement is unworkable in this case (Br. 19-21); factfinding is required to evaluate his likelihood of success on the merits (Br. 23-24); the government "misrepresents" his ineffective-assistance claim (Br. 25-32); the government mispresents the Rule 59(e) motion that he seeks to reopen (Br. 32-36); and this Court should not even consider whether he can satisfy the requirements for relief from judgment under Rule 60(b) (Br. 36-40). These arguments lack merit.

### 1.    The Government Did Not Waive the Requirement of Likely Success on the Merits

Lee claims (Br. 13-15) that the government failed to preserve the argument that he had to demonstrate, and the district court had to find, a strong likelihood of success on the merits. He is wrong.

This Court has broad discretion to determine whether an argument is adequately preserved on appeal. *See, e.g.*, *Seniority Research Grp. v. Chrysler Motor Corp.*, 976 F.2d 1185, 1188 (8th Cir. 1992); *Charles v. Allstate Ins. Co.*, 932 F.2d 1265, 1269 (8th Cir. 1991). Even a brief mention of an argument in the district court can preserve it for appeal. *See, e.g.*, *United States v. Ritchie Special Credit Investments, Ltd.*, 620 F.3d 824, 835 (8th Cir. 2010). The Court will also consider arguments that are a narrow subset of more general arguments raised

10

below. *See, e.g.*, *Hartford Fire Ins. Co. v. Clark*, 562 F.3d 943, 946 (8th Cir. 2009); *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1144 n.5 (8th Cir. 2007); *see also Universal Title Ins. Co. v. United States*, 942 F.2d 1311, 1314-15 (8th Cir. 1991) (concluding that the government's argument below was "broad enough to encompass all of its arguments on appeal"). In addition, this Court may in its discretion consider a new issue that was not raised in the district court, *see, e.g.*, *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 890-91 (8th Cir. 2009), and is even more apt to consider a new argument in support of an issue raised below, *see, e.g.*, *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 508 (8th Cir. 2012).

The likelihood-of-success arguments in the government's opening brief are preserved. In the district court, the government explained that a defendant seeking a stay of execution had to "show a significant possibility of success on the merits." Dkt. 1355, at 5-6 (internal quotation marks omitted). The government stated that the underlying claim of ineffective assistance of counsel that Lee sought to raise through his Rule 60(b) motion "lacks merit." *Id.* at 8. The government explained that it could not present all of the reasons that Lee's claim lacks merit because of the truncated timeframe to respond to Lee's stay motion, but the government directed the court to a number of other filings in this case in which it had presented those arguments. *Id.* at 8 n.2. In short, the

11

government adequately informed the district court of the likelihood-of-success requirement and argued that Lee failed to meet it.

It would be particularly inappropriate to set aside the government's arguments as unpreserved in the circumstances of this case, where the government's need to file a streamlined response was entirely of Lee's making. Lee filed his Rule 60(b) motion and the accompanying stay motion at around 11 a.m. Eastern Standard Time on December 6, 2019, three calendar days (and one business day) before his scheduled execution, even though all the facts and law that supported the motions were or should have been known to him at least four months earlier. The district court then entered an order at 4 p.m. informing the government that, if it intended to respond to Lee's stay motion, it had to do so by 5 p.m., Dkt. 1354, which it did. The government necessarily focused on arguments that were readily explainable and also digestible within a short time period by a district judge who had been assigned to the case only recently. The government nonetheless informed the district court of the likelihood-of-success requirement and Lee's failure to meet that requirement.

Deeming the government's arguments unpreserved on the facts of this case would create terrible incentives in capital litigation by rewarding litigants who wait until the last minute to file stay motions. To the extent there is any question whether the government adequately preserved any arguments raised

12

on appeal, the Court should exercise its broad discretion to consider all the government's arguments preserved.

### 2. The Likelihood-of-Success Standard Readily Applies Here

Lee claims (Br. 20) that the likelihood-of-success requirement is "difficult[]" to apply in this case. This Court has applied the standard in similar circumstances, however, and can readily do so here.

Because Lee's stay motion is premised on his motion for relief from judgment under Rule 60(b), Lee must demonstrate a "likelihood of success on his claims for Rule 60(b) relief." *Williams*, 854 F.3d at 1009. In other words, he must show a strong likelihood that he will be able to overturn his death sentence via his Rule 60(b) motion.

Lee's Rule 60(b) seeks to reopen his § 2255 case so that the district court can consider anew the Rule 59(e) motion he filed in that case presenting new evidence in support of an ineffective-assistance claim. Thus, in order to overturn his sentence via his Rule 60(b) motion, Lee first would have to show "extraordinary circumstances" that warrant reopening his § 2255 proceedings under Rule 60(b). *See Davis*, 855 F.3d at 835-36. Assuming Lee could make that showing, thereby permitting a fresh look at the Rule 59(e) motion, he would then have to show that he meets the requirements for reconsideration under Rule 59(e). *See United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930,

13

Appellate Case: 19-3618    Page: 20    Date Filed: 01/13/2020 Entry ID: 4870675

934 (8th Cir. 2006). And finally, Lee would have to show that the underlying ineffective-assistance claim in the Rule 59(e) motion has merit. As the government explained in its opening brief, and further explains below, Lee cannot demonstrate a strong likelihood that he can overcome any of these hurdles, let alone all three.

Lee contends (Br. 19-20) that a court cannot evaluate the merits of his Rule 60(b) motion until the Supreme Court issues its decision in *Banister v. Davis*, No. 18-6943 (Sup. Ct.). This Court, however, can simply assume the most defendant-friendly outcome possible in *Banister*, which would be a ruling that the statutory restrictions on second or successive collateral attacks have no application whatsoever to Rule 59(e) motions. That is the position Lee asserts in his Rule 60(b) motion, Dkt. 1352, at 4-5, showing there is no difficulty in positing the most defendant-friendly resolution of *Banister*, and courts regularly deny relief on the basis of assumptions most favorable to the moving party. If Lee's position is that it is not possible to gauge the merits of his Rule 60(b) motion until *Banister* is decided, then that means he necessarily has not carried his burden of showing a strong likelihood of success on the merits.

Lee also argues (Br. 21) that if this Court decides to apply a likelihood-of-success requirement, it should apply the standard for stay applications pending a ruling on a petition for certiorari in the Supreme Court, which

14

requires a showing that "four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari." *Barefoot*, 463 U.S. at 895. According to Lee, he can necessarily make this showing because the Supreme Court granted certiorari in *Banister*. Lee's argument fails, however, because, he actually filed a petition for certiorari raising the identical issue in *Banister*, and the Supreme Court denied his petition. *Lee v. United States*, 135 S. Ct. 72 (2014). In opposing the petition, the government acknowledged the circuit conflict that *Banister* will now resolve but argued—consistent with its arguments here—that the Court should deny Lee's petition because he "would be entitled to no relief under Rule 59(e)" whether or not the statutory restrictions on second or successive § 2255 motions were applicable. Br. in Opp. at 33-35, *Lee v. United States*, No. 13-10085 (Sup. Ct.) (filed July 14, 2014), 2014 WL 3962728, at *15-*16. Thus, even if the *Barefoot* standard were applicable here, which it is not, the Supreme Court's denial of Lee's petition shows that Lee could not satisfy it.

Lee also contends (Br. 23-24) that the likelihood of success on the merits cannot be evaluated without additional factfinding. But Lee carries the burden to demonstrate a likelihood of success, and he necessarily has not done so if he purportedly needs more factual development to make that showing. Lee's request for factual development is also vague and conclusory, and granting that

15

request would constitute a de facto stay, creating an end-run around the applicable stay requirements.

### 3. Lee Does Not Show That He Is Likely to Overturn His Sentence via His Rule 60(b) Motion

As described, Lee must overcome at least three legal hurdles to overturn his sentence through his Rule 60(b) motion. Because Lee cannot demonstrate a strong likelihood that he can overcome any of these hurdles, let alone all three, this Court should vacate the district court's stay order.

### a. The Underlying Ineffective-Assistance Claim Lacks Merit

Lee attempts to revive an ineffective-assistance claim from his Rule 59(e) motion that asserted that his "trial counsel were ineffective for failing to fully and adequately object to the psychopathy evidence" on the ground that the "PCL-R and psychopathy are scientifically invalid" to predict future dangerousness in prison. Dkt. 1165, at 35. As the government has explained (Gov't Br. 10-13, 37-45), Lee's claim fails to meet the *Strickland* standard for ineffective assistance of counsel.

Lee's trial counsel objected to the introduction of any evidence about psychopathy, and the district court eventually sustained the objection, albeit after permitting the government to cross-examine defense expert Mark Cunningham, Ph.D., on that topic. The government elicited testimony from

16

Dr. Cunningham that he had reviewed a report by the government's expert, Thomas Ryan, Ph.D., in which Dr. Ryan had identified Lee as falling into the psychopathy range under the Hare psychopathy checklist revised (PCL-R). Dr. Cunningham testified that the PCL-R predicted an individual's likelihood of violence in the community but that scientific studies had not adequately shown it predicted violence in prison. After Dr. Cunningham's testimony, the district court confirmed that Lee's counsel had interposed an ongoing objection to the cross-examination about psychopathy, and then the court prohibited any further references to the PCL-R or psychopathy. Accordingly, no expert provided opinion testimony that Lee's PCL-R score predicted his future dangerousness in prison, and the government did not mention "psychopathy" during closing arguments.[3]

Lee therefore cannot satisfy either prong of the *Strickland* standard. His counsel's objection ensured that no expert provided opinion testimony that he claims would have been scientifically invalid, that is to say, an opinion that

---

[3] Lee contends (Br. 30) that the government referred to psychopathy when it referred to Lee's "diagnosis" during closing arguments. The record shows that the government, in discussing mitigating factors, *see* Tr. 7964, referred in one sentence to a "diagnosis" without using the word psychopathy and then in the next sentence discussed a 1990 evaluation from a "staff psychologist from [an] Oklahoma juvenile facility" that Lee was "at risk to re-offend violently," Tr. 7968.

Appellate Case: 19-3618    Page: 24    Date Filed: 01/13/2020 Entry ID: 4870675

psychopathy predicts future dangerousness in prison. Instead, as a result of his counsel's objection, the jury only heard testimony from his own expert that the PCL-R predicted dangerousness in the community but had not been shown to predict dangerousness in prison—and even the testimony that the PCL-R predicted dangerousness in the community was admitted only over defense counsel's continuing objection. Lee cannot establish that he received ineffective assistance when his lawyers pursued a strategy that resulted in testimony from his own expert that Lee believes was accurate.

Lee appears to suggest (Br. 26) that the government introduced "findings" from the government's expert, Dr. Ryan, that linked Lee's PCL-R score with his future dangerousness in prison. That is incorrect. Although Dr. Ryan's expert report used the PCL-R to evaluate Lee's risk of future dangerousness, that report was never introduced into evidence, and Dr. Ryan did not testify about psychopathy at trial, because by the time he testified on rebuttal, the district court had prohibited further reference to psychopathy. In other words, Lee's counsel successfully kept out any expert opinion by Dr. Ryan linking psychopathy and future dangerousness.

Lee also appears to argue (Br. 29-30) that the government's questions to Dr. Cunningham and statements to the jury suggested a scientific link between psychopathy and dangerousness in prison. But Lee's counsel objected to all of

18

the government's questioning about psychopathy and therefore cannot be said to have provided ineffective assistance. Moreover, the jury was instructed that "[t]he statements, the arguments, questions and comments by the lawyers" were not evidence, Tr. 7013, and the jury is presumed to have followed those instructions, *see United States v. Patterson*, 684 F.3d 794, 799 (8th Cir. 2012). The only actual evidence about psychopathy came in through Lee's expert witness, Dr. Cunningham, who, as described, provided testimony that Lee views as accurate.

Lee contends (Br. 26-27) that the government misunderstands his claim and that he actually argues that his trial counsel were ineffective because they should have challenged the expert report from Dr. Ryan that they received prior to trial. Lee claims that his lawyers should have "confronted" Dr. Ryan with information about psychopathy and dangerousness in prison, and if so confronted, he "would have withdrawn his opinion." Lee Br. 26 (emphasis omitted). Even so framed, however, the argument suffers from the same defects. The jury did not hear any "opinion" from Dr. Ryan about psychopathy, let alone an opinion that psychopathy was linked to violence in prison. The only opinions the jury heard about psychopathy were those of defense expert Dr. Cunningham, and he made clear his opinion that psychopathy did not determine dangerousness in prison. Moreover, Lee's

Appellate Case: 19-3618    Page: 26    Date Filed: 01/13/2020 Entry ID: 4870675

argument is highly speculative and cannot form the basis of a valid ineffective-assistance claim. Lee's lawyers cannot be faulted in hindsight for not confronting the government's expert in an attempt to change his considered opinion.

Lee also cannot show that confronting Dr. Ryan would have changed any of the evidence that came in at trial. Lee suggests that if Dr. Ryan had withdrawn his "opinion," the jury would not have heard any evidence about psychopathy, but he does not explain why that would have been the case. Even if Dr. Ryan had withdrawn his opinion that Lee's PCL-R score predicted dangerousness in prison, Lee's score on the PCL-R as administered by Dr. Ryan would have remained valid, and the jury still would have been entitled to hear evidence about Lee's PCL-R score. As this Court has explained, the Federal Death Penalty Act "erects very low barriers to the admission of evidence at capital sentencing hearings," *United States v. Lee*, 274 F.3d 485, 494 (8th Cir. 2001), and "Lee's potential psychopathy was probative of his future dangerousness," *id.* at 495. Lee does not dispute that the PCL-R was probative of violence in the community, and the jury was entitled to consider evidence about Lee's propensity toward violence in the community when evaluating future dangerousness. Just as the jury was entitled to consider other evidence about Lee's propensity toward violence in the community when evaluating his

20

future dangerousness, including evidence about his involvement in murdering the Muellers and his involvement in an earlier murder in 1990, so too the jury was entitled to consider the psychopathy evidence.

The government therefore has not, as Lee asserts (Br. 27-31), made any "about-face" in this case. The government has asserted and continues to assert that the evidence of psychopathy was probative of Lee's future dangerousness. To the extent Lee argues that evidence about future dangerousness had to be exclusively "relevant to [his] future dangerousness *in prison*," Br. 28, this Court has rejected the argument that "future dangerousness for a person under a sentence of life imprisonment should be narrowed to future dangerousness *in prison*," *United States v. Coonce*, 932 F.3d 623, 642-43 (8th Cir. 2019).

To be sure, Lee was entitled to present evidence and argument that propensity toward violence in the community should be given little weight in determining whether he would present a risk in a prison setting, and in fact he presented such evidence through his expert, Dr. Cunningham. As the Supreme Court has explained, "relevant, unprivileged evidence should be admitted and its weight left to the fact finder, who would have the benefit of cross examination and contrary evidence by the opposing party," and testimony about "dangerousness may be countered not only as erroneous in a particular case but as generally so unreliable that it should be ignored." *Barefoot*, 463 U.S.

21

at 898. Consistent with *Barefoot*, Lee had ample opportunity to provide evidence that Lee's PCL-R score was an unreliable predictor of dangerousness in prison and should not be considered, but the jury was entitled to hear the psychopathy evidence and give that evidence the weight it saw fit.

### b. Lee Cannot Use Rule 59(e) to Raise New Evidence He Could Have Raised in His § 2255 Motion

By Lee's own account, he seeks to reopen his § 2255 collateral-review case—via Rule 60(b)—"to be put back in the position" he was in when he filed his Rule 59(e) motion for reconsideration of the district court's denial of his § 2255 motion. Lee Br. 25. Even if Lee were placed back in that position, however, he would not be entitled to reconsideration under Rule 59(e).

As Lee has previously acknowledged, he used his Rule 59(e) motion to present evidence for the first time to support an ineffective-assistance claim. *See United States v. Lee*, 792 F.3d 1021, 1021, 1024-25 (8th Cir. 2015). Lee either provided new evidence in support of an ineffective-assistance claim that he had previously raised in his § 2255 motion, as Lee contends (Br. 32-33), or he provided new evidence in support of a new ineffective-assistance claim. Either way, Rule 59(e) was not a proper vehicle to present new evidence to the district court. As this Court has recognized, when the district court denied Lee's Rule 59(e) motion, it "relied upon [this Court's] rule that 'Rule 59(e) motions

22

cannot be used to introduce new evidence . . . which could have been offered or raised prior to the entry of judgment.'" *Lee*, 792 F.3d at 1025 (quoting *Metro. St. Louis Sewer Dist.*, 440 F.3d at 934).

Lee does not acknowledge this rule, let alone attempt to show he would be able to overcome it if he were placed "back in the position" when he first filed his Rule 59(e) motion. Lee instead argues (Br. 35-36) that the district court erroneously concluded that the ineffective-assistance claim in his Rule 59(e) motion lacked merit. But apart from the district court's rejection of Lee's claim on the merits, the court also concluded that Lee impermissibly used Rule 59(e) to present new evidence in support of that claim. Because Lee's impermissible use of Rule 59(e) to present new evidence provided a sufficient reason on its own to deny the reconsideration motion, Lee cannot show that he is likely to obtain relief if he were "put back" in the same position as when he first filed that motion.

### c. Lee Cannot Demonstrate Extraordinary Circumstances

A movant seeking relief from judgment under Rule 60(b) must demonstrate that "extraordinary circumstances" warrant that relief, *see, e.g.*, *Davis*, 855 F.3d at 836, yet Lee contends (Br. 38) that this Court should not consider whether he is likely to demonstrate extraordinary circumstances

23

because "that issue goes to the *merits* of the 60(b) motion." The merits of Lee's Rule 60(b) motion are precisely what the Court must evaluate, however, because Lee must establish a strong likelihood of obtaining relief through his Rule 60(b) motion in order to obtain a stay of his execution. Lee therefore is not entitled to a stay unless he can show a strong likelihood of demonstrating extraordinary circumstances, a showing Lee cannot make.

As the government has explained, a change in decisional law is rarely an extraordinary circumstance justifying relief under Rule 60(b). That is not to say that a change in the law can never justify relief under Rule 60(b), but the Supreme Court's decision in *Buck v. Davis*, 137 S. Ct. 759 (2017), demonstrates just how truly exceptional the circumstances must be in order for a change in decisional law to warrant relief from judgment. In *Buck*, a psychologist testified at a capital sentencing hearing that the defendant was "statistically more likely to act violently because he is black." *Id.* at 767. The Court concluded that inviting the jury to sentence a defendant to death in part based on his race "poisons public confidence in the judicial process" and "injures not just the defendant, but the law as in institution," "the community at large," and "the democratic ideal reflected in the processes of our courts." *Id.* at 778 (internal quotation marks omitted). The Court also noted that the State of Texas had acquiesced to relief in five other cases in which the same psychologist had

24

provided similar testimony, circumstances the Court characterized as "remarkable." *Id.* at 778-79.

As this Court has concluded elsewhere, "[t]hese extraordinary facts have no application to the present case." *Davis v. Kelley*, 855 F.3d at 836. Lee cannot come close to demonstrating extraordinary circumstances of the magnitude in *Buck*. A change in decisional law in *Banister* would not meet that standard. Among other things, Lee's Rule 59(e) motion is improper, even if the statutory limitations on second or successive § 2255 motions are inapplicable, because the motion presented new evidence that Lee could have presented before judgment was entered. The underlying ineffective assistance claim also lacks merit, and this Court has expressly held that the jury was entitled to consider the psychopathy evidence. Moreover, any new procedural rule set forth in *Banister* would not be a watershed procedural rule that would apply retroactively on collateral review. *See Cornell v. Nix*, 119 F.3d 1329, 1332 (8th Cir. 1997) (a change in decisional law "having retroactive application may, in special circumstances, constitute an extraordinary circumstance") (internal quotation marks omitted); *Burton v. Fabian*, 612 F.3d 1003, 1009-10 (8th Cir. 2010) (new procedural rules apply retroactively on collateral review only if watershed).

Appellate Case: 19-3618    Page: 32    Date Filed: 01/13/2020 Entry ID: 4870675

**B.     The Stay Should Be Vacated Because Of Lee's Undue Delay**

Lee does not attempt to justify his delay in seeking a stay of his execution. All the facts and law asserted by Lee in his Rule 60(b) motion and his motion for a stay were known to Lee at least four months earlier, after the Supreme Court granted certiorari in *Banister* and the United States set a date for his execution. Lee does not dispute that he could have sought a stay at that time or at least a reasonable time thereafter. Lee provides no explanation for his decision to instead wait until the business day before his scheduled execution. Lee instead contends (Lee Br. 21-23) that delay is never a proper consideration when a defendant seeks a stay of execution based on a pending Supreme Court case that will be decided after the scheduled date of execution. He is incorrect.

Lee was required to seek a stay with sufficient time to allow the district court to evaluate his stay application under the applicable legal standard, and in particular to consider his likelihood of success on the merits, which in this case meant a determination whether a decision in *Banister* could feasibly provide a vehicle to overturn Lee's death sentence. Although the district court would have had no ability to grant Lee's Rule 60(b) motion before a decision in *Banister*, the court readily could have denied Lee's motion on the ground that nothing the Supreme Court decides in *Banister* could possibly entitle Lee to

26

relief. Lee instead filed his Rule 60(b) motion with inadequate time for the district court to make that determination and claimed that he was entitled to a stay merely because *Banister* is pending. The district court understandably may have been inclined to grant the stay out of an abundance of caution in those circumstances. As the Seventh Circuit has noted, "[i]t is understandable that a district judge, entertaining a request for relief from capital punishment, would want to take a hard look at the matter, a look that may take more time than the impending execution date permits." *Lee v. Watson*, No. 19-3399, 2019 WL 6718924, at *2 (7th Cir. Dec. 6, 2019). The Supreme Court and this Court have repeatedly warned, however, that "[u]se of piecemeal litigation" or "dilatory tactics" is sufficient reason to deny a stay. *Williams*, 854 F.3d at 1009 (internal quotation marks omitted). Lee should not be permitted to obtain a stay the need for which was created by his own litigation conduct.

## C.    The Remaining Equities Further Weigh Against a Stay

Lee does not attempt to rebut the government's arguments that the remaining equities weigh against a stay of his execution except that he criticizes the government (Lee Br. 40-41) for identifying as a relevant factor the interests of victims in timely enforcement of a death sentence. Although, as Lee points out, some of the family members of the victims in this case have been vocal about their opposition to carrying out Lee's death sentence, the

Appellate Case: 19-3618    Page: 34    Date Filed: 01/13/2020 Entry ID: 4870675

government is aware of at least one family member who supports Lee's execution. The interests of that victim should not be disregarded merely because that family member has elected not to announce his or her views to the public.

## CONCLUSION

The Court should vacate the district court's stay order.

Respectfully submitted,

CODY HILAND
United States Attorney
Eastern District of Arkansas

BRIAN A. BENCZKOWSKI
Assistant Attorney General

JOHN P. CRONAN
Principal Deputy Assistant Attorney General

MICHAEL GORDON
Assistant United States Attorney
Eastern District of Arkansas

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

January 13, 2020

28

# CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND LENGTH LIMITATIONS

1.     This brief contains 6,499 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced, 14-point serif typeface using Microsoft Office Word 2013.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766

29

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on January 13, 2020. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766

Appellate Case: 19-3618     Page: 37     Date Filed: 01/13/2020 Entry ID: 4870675